**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1222**

JAMES HAMILTON,

Plaintiff - Appellant,

v.

WILLIAM L. PALLOZZI, Superintendent of the Maryland State Police; BRIAN E. FROSH, Attorney General of Maryland,

Defendants - Appellees.

--------------------------------------------------------

CONSERVATIVE LEGAL DEFENSE AND EDUCATION FUND; DOWNSIZE DC FOUNDATION; DOWNSIZEDC.ORG; GUN OWNERS FOUNDATION; GUN OWNERS OF AMERICA, INC.; INSTITUTE ON THE CONSTITUTION; THE HELLER FOUNDATION; UNITED STATES JUSTICE FOUNDATION,

Amici Supporting Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. James K. Bredar, District Judge. (1:15-cv-02142-JKB)

Argued: October 25, 2016                    Decided: February 17, 2017

Before SHEDD, DUNCAN, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the opinion, in which Judge Shedd and Judge Duncan joined.

**ARGUED**: Alan Gura, GURA & POSSESSKY, PLLC, Alexandria, Virginia, for Appellant. Mark Holdsworth Bowen, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Pikesville, Maryland, for Appellees. **ON BRIEF**: Cary Hansel, HANSEL LAW, P.C., Baltimore, Maryland, for Appellant. Brian E. Frosh, Attorney General of Maryland, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. Michael Connelly, Ramona, California, for Amicus United States Justice Foundation; Robert J. Olson, Herbert W. Titus, William J. Olson, John S. Miles, Jeremiah L. Morgan, WILLIAM J. OLSON, P.C., Vienna, Virginia, for Amici Conservative Legal Defense and Education Fund, Downsize DC Foundation, DownsizeDC.org, Gun Owners Foundation, Gun Owners of America, Inc., Institute on the Constitution, and The Heller Foundation.

FLOYD, Circuit Judge:

Appellant James Hamilton is a convicted felon in Virginia who has had his civil rights restored by the Governor of Virginia and his firearms rights restored by the Virginia courts. Now, as a resident of Maryland, he desires to obtain a permit for a handgun and possess a long gun, both of which he is unable to do in Maryland absent a full pardon from the Governor of Virginia. He brought this as-applied Second Amendment challenge to Maryland's firearms regulatory scheme, arguing that the scheme is unconstitutional as applied to him. The district court dismissed his complaint for failure to state a claim, and Hamilton appealed. For the reasons discussed below, we affirm.

I.

Hamilton pleaded guilty on November 6, 2006, in Virginia to three felonies: (1) credit card fraud, in violation of Va. Code § 18.2-195; (2) credit card theft, in violation of Va. Code § 18.2-192; and (3) credit card forgery, in violation of Va. Code § 18.2-193(1)(a). He was sentenced to four years imprisonment, which was suspended, a term of four years of probation, and ordered to pay $1,247.90 in restitution and an additional $1,090.00 in court costs.[1]

---

[1] Hamilton's complaint makes no mention of his guilty plea or probation period, only stating that he was "convicted." *See* J.A. 7, ¶ 9. However, on a motion to dismiss for failure to state a claim, we may take judicial notice of the order of conviction, as it is a matter of public record. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

On November 20, 2013, the Governor of Virginia restored Hamilton's rights to vote, hold public office, sit on a jury, and serve as a notary, but specifically did not restore his "right to ship, transport, possess or receive firearms, which must be restored in accordance with Va. Code. § 18.2-308.2." J.A. 22; *see also* J.A. 7, ¶ 10. His firearms rights were restored pursuant to that code section on April 22, 2014, by the Circuit Court for Spotsylvania County, Virginia. Hamilton subsequently was registered as an Armed Security Officer with the Virginia Department of Criminal Justice Services, and is certified in the use of handguns and shotguns. Additionally, as of the filing of his reply brief before this Court, he is employed through a contractor as a Protective Security Officer with the Department of Homeland Security (DHS). *See* Appellant's Reply Br. at 1. Hamilton is married, has three children, serves as the head coach of a junior league wrestling team, and has no history of violent behavior.

Hamilton desires to purchase and possess both a handgun and a long gun for self-defense within his own home, but asserts that he is unable to do so due to Maryland's regulatory scheme for firearm ownership. Maryland prohibits possession of a handgun, rifle, or shotgun by anyone who has been "convicted of a disqualifying crime." *See* Md. Code Ann., Pub. Safety §§ 5-133(b)(1), 5-205(b)(1). A "disqualifying crime" includes both a violation classified as a felony in Maryland and a violation classified as a

4

misdemeanor in Maryland that is punishable by more than two years imprisonment. *Id.* § 5-101(g).[2]

Additionally, in order to possess a handgun, a person must first apply for and obtain a permit from the Maryland State Police (MSP). *See id.* §§ 5-101(r)(1), 5-117, 5-118, 5-303. As part of that application, the applicant must state under penalty of perjury that the applicant "has never been convicted of a disqualifying crime," and must certify that the applicant is not otherwise prohibited from possessing a handgun under § 5-133(b). *Id.* §§ 5-118(b)(3), 5-306(a)(2)(i). Possession of a handgun without a permit is a misdemeanor punishable by up to five years imprisonment, *id.* § 5-144, and possession of a rifle or shotgun in violation of the regulatory scheme is a misdemeanor punishable by up to three years imprisonment, *id.* § 5-205(d).

The crimes for which Hamilton was convicted in Virginia each have a Maryland equivalent: (1) receiving property by stolen, counterfeit, or misrepresented credit card, in violation of Md. Code Ann., Crim. Law § 8-209, a felony under the facts of Hamilton's conviction; (2) credit card theft, in violation of Md. Code Ann., Crim. Law § 8-204, a misdemeanor subject to eighteen months imprisonment; and (3) credit card counterfeiting, in violation of Md. Code Ann., Crim. Law § 8-205, a felony. Thus, on the basis of at least two of his Virginia felony convictions, Hamilton has two disqualifying convictions in Maryland.

---

[2] A crime committed out of state is a disqualifying crime if the Maryland equivalent is a disqualifying crime. *McCloud v. Dep't of State Police*, 44 A.3d 993, 995 (Md. 2012).

Hamilton wanted to obtain a permit to carry a handgun from the MSP, and although he did not formally apply for such a permit, he made inquiries regarding obtaining a permit and was ultimately informed by an Assistant Attorney General that he could not possess a firearm in Maryland unless he obtained a full pardon from the Governor of Virginia. Fearing arrest, prosecution, incarceration, and fines, Hamilton has refrained from attempting to obtain a handgun, rifle, or shotgun.

This suit was brought in July 2015 against Appellees William L. Pallozzi, Superintendent of the MSP, and Brian E. Frosh, Attorney General of Maryland (collectively, the "Maryland Defendants"), both in their official capacities. Hamilton seeks a declaration that the regulatory scheme is unconstitutional under the Second Amendment as applied to him, and further seeks a permanent injunction against the Maryland Defendants and their employees from enforcing the regulatory scheme against him as it pertains to his Virginia convictions. The Maryland Defendants moved to dismiss the complaint for failure to state a claim, and Hamilton subsequently moved for summary judgment. In their opposition to summary judgment, the Maryland Defendants raised a concern regarding justiciability.

With both motions fully briefed, the district court proceeded to decide the matter on the Maryland Defendants' motion to dismiss in a published opinion. *Hamilton v. Pallozzi*, 165 F. Supp. 3d 315 (D. Md. 2016). The district court first, with a great deal of hesitation, determined that the case was justiciable. *Id.* at 323. Then, the district court found that under our two-step approach to Second Amendment challenges as announced

6

in *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010), Hamilton failed to state a claim at the first step. Specifically, the court held:

> [B]ecause of [Hamilton]'s criminal past, the State of Maryland has acted well within its discretion in choosing to withhold firearms privileges from him—at least until he obtains a full pardon under Virginia law. [Hamilton] has not shown that his factual circumstances "remove his challenge from the realm of ordinary challenges." Accordingly, he has not carried—*and cannot carry*—his burden at *Chester* prong one, and the Court will dismiss his § 1983 claim.

*Hamilton*, 165 F. Supp. 3d at 328 (quoting *United States v. Moore*, 666 F.3d 313, 319 (4th Cir. 2012)). The court dismissed the complaint with prejudice, and Hamilton timely noticed this appeal.

II.

Although the Maryland Defendants did not notice a cross-appeal of the district court's determination that the case was justiciable, the issue was briefed by the parties. *See* Appellant's Br. at 15–24; Appellee's Br. at 5–11. Justiciability is an issue of subject-matter jurisdiction, and we have an independent obligation to evaluate our ability to hear a case before reaching the merits of an appeal. *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) (en banc). Once satisfied that we have jurisdiction, we will reach the merits of the appeal.

The district court decided this case on the basis of the Maryland Defendants' motion to dismiss rather than Hamilton's competing motion for summary judgment. *Hamilton*, 165 F. Supp. 3d at 318 n.1. As to justiciability, we review the factual findings for clear error and the legal conclusions de novo. *Al Shimari v. CACI Premier Tech.,*

7

*Inc.*, 840 F.3d 147, 154 (4th Cir. 2016). As to the merits of Hamilton's claim, we review de novo a dismissal for failure to state a claim, assume as true all factual allegations in Hamilton's complaint, and draw all reasonable inferences in Hamilton's favor. *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). However, "we need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (internal quotations and citations omitted).

III.

Hamilton challenges two different statutes that have two different requirements for justiciability. The first challenge, as to the permitting scheme for a handgun, is one in which he argues the injury has already occurred. The second challenge, as to the criminalization of possession of a long gun, is a pre-enforcement challenge.

"When a party . . . brings a preenforcement challenge to a statute or regulation, it must [1] allege 'an intention to engage in a course of conduct arguably affected with constitutional interest,' and [2] there must exist 'a credible threat of persecution' under the statute or regulation." *Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 386 (4th Cir. 2001) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). There is no dispute that Hamilton meets both requirements for the pre-enforcement challenge. Thus, the focus of our discussion is on the challenge to the permit scheme, and we find the challenge justiciable.

## A.

The Maryland Defendants argue that because Hamilton has not yet applied for a permit, and might be denied a permit for reasons other than a disqualifying conviction, the issue of his disqualifying conviction may be irrelevant. Thus, they submit his claim is not ripe because of his failure to apply for a permit. Hamilton responds that he need not go through the futile exercise of applying for a permit when he has been told already that it will be rejected. We agree with Hamilton.

As our sister circuits have recognized in the context of similar Second Amendment challenges, "the Government cannot so easily avoid suit when it has erected a regulatory scheme that precludes [a plaintiff] from truthfully completing the application form the Government requires for the purchase of a firearm." *Dearth v. Holder*, 641 F.3d 499, 502 (D.C. Cir. 2011); *see Horsley v. Trame*, 808 F.3d 1126, 1129 (7th Cir. 2015) (refusing to require an under-21 plaintiff to go through the process of appealing a denial of a gun possession permit where the plaintiff was challenging the requirement that under-21 applicants have a parent or guardian signature on their application); *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) (explaining that "[f]ailure to apply for a license would not preclude Decastro's challenge if he made a 'substantial showing' that submitting an application 'would have been futile,'" but ultimately finding that the challenger did not make a substantial showing (quoting *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997))); *see also Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 643 (3d Cir. 1995) ("Litigants are not required to make such futile gestures to establish ripeness.").

9

We have yet to be so clear, but we agree with our sister circuits that plaintiffs are not required to undertake futile exercises in order to establish ripeness, and may demonstrate futility by a substantial showing. Here, based on the pleadings and the evidence produced in support of justiciability,[3] Hamilton has been informed by no less than an Assistant Attorney General of Maryland that the state will not consider his disqualifying conviction removed unless and until Hamilton obtains a full pardon from the Governor of Virginia. J.A. 9 ¶ 20; J.A. 32. Thus, any attempt to apply for a permit— regardless of any other reason Maryland may potentially have to find Hamilton ineligible—would be futile. As such, we agree with the lower court and find that Hamilton's claims are ripe.

B.

The district court itself raised a concern in finding this case justiciable that although the application for a permit would have been futile, obtaining a pardon from the Governor of Virginia may not have been. *See Hamilton*, 165 F. Supp. 3d at 321–23.[4] The district court nonetheless concluded that this case was justiciable, after considering

---

[3] We may consider on a motion to dismiss evidence beyond the complaint and its integral documents when considering a factual challenge to subject-matter jurisdiction, as presented here, without converting the motion into one for summary judgment. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).

[4] When jurisdiction is implicated, it is irrelevant to our standard of review whether the issue was raised by a litigant or by the lower court. *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009).

our decision in *Doe v. Virginia Department of State Police*, 713 F.3d 745 (4th Cir.), *reh'g en banc denied*, 720 F.3d 212 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1538 (2014).

In *Doe*, the plaintiff was registered as a sex offender and was not permitted onto school or church grounds without permission from the school board or church, respectively, in addition to permission from the state court. 713 F.3d at 751. The plaintiff declined to obtain relief using the prescribed methods, and instead brought suit pursuant to 42 U.S.C. § 1983. This Court held that:

> [Doe] does not allege harm merely from being placed on the Registry, but rather from the consequences her categorization entails for her ability to access school and church property. However, as of yet, these consequences do not affect her with finality, as she has not taken any of the steps necessary to access those properties. Because Doe has not attempted to petition a Virginia circuit court, the [School] Board, or any church, it is far from clear whether she will ultimately be barred from entering those properties. Therefore, any injury to her [constitutional] rights she would suffer from not being able to enter a school or church remains hypothetical.

*Id.* at 754. We concluded that requiring Doe to "seek permission from state entities prior to bringing suit in federal court does not amount to requiring exhaustion of state remedies for her constitutional claims." *Id.* at 754 n.5. We also held that "[b]ecause Doe has yet to petition a Virginia circuit court for permission to enter school or church property, all of her constitutional claims . . . are dependent on future uncertainties and thus not ripe for judicial decision." *Id.* at 758–59.

The dissent in *Doe* feared that this holding amounted to an exhaustion requirement, in contravention of the Supreme Court's holding in *Patsy v. Board of Regents of Florida*, 457 U.S. 496 (1982). *See id.* at 764 (King, J., dissenting). In a concurring opinion responding to this concern, Judge Keenan explained that the decision

turned on the "clear distinction between the requirement that administrative remedies be exhausted and the requirement that a challenged action be final before it is judicially reviewable." *Id.* at 762 (Keenan, J., concurring) (citing *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192 (1985)). In elucidating this distinction, Judge Keenan explained that we were not requiring Doe to file suit in state court contesting the legality of her designation as a sex offender, nor appeal a rejection from the school board to state court; rather, we required her to obtain that initial decision. *Id.* at 762–63. Judge Keenan concluded that "[t]he Virginia legislature expressly has designated the Virginia circuit courts and the local school boards as the initial decisionmakers in cases of this nature. . . . Manifestly, federal courts do not possess such expertise, and should not serve as vehicles for parties to circumvent state law by considering premature constitutional challenges." *Id.* at 763. We reaffirm this position today, and find the instant matter distinguishable.

Hamilton aptly notes in addressing the *Doe* issue that "Virginia's Governor is not an 'initial decisionmaker,' or indeed, any kind of decisionmaker, as to what Maryland law forbids or how it applies." Appellant's Br. at 22–23. We agree with this. But he then goes on to argue that requiring him to seek a pardon from the Governor of Virginia, who has already restored all of his civil rights except for firearms ownership, would be an administrative hurdle in violation of *Patsy*. On this point, he is incorrect.

The initial decisionmaker here is the MSP who is in charge of determining whether a previous conviction is disqualifying. The Governor of Virginia is entirely outside the process of determining who is eligible for handgun permits in Maryland.

12

Hamilton has received his initial decision, albeit somewhat informally, that he is ineligible to obtain a permit on the basis of his disqualifying Virginia convictions. He thus is "aggrieved from a final, reviewable decision," *see Doe*, 713 F.3d at 762 (Keenan, J., concurring), and the "consequences do . . . affect [him] with finality," *see id.* at 754 (majority opinion). Therefore, we affirm the district court's finding that the case is justiciable, and proceed to the merits of Hamilton's claim.

## IV.

### A.

The Supreme Court has twice recognized that "prohibitions on the possession of firearms by felons" are presumptively lawful, first in *District of Columbia v. Heller*, 554 U.S. 570, 626–27 & n.26 (2008), and again two years later in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010).[5] Operating under this presumption of lawfulness, we have recognized the possibility that an as-applied challenge to a felon disarmament law could succeed in rebutting the presumption. *See, e.g.*, *United States v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012). The framework under which we review a Second Amendment challenge has been laid out clearly:

> *Chester* established a two-prong test for assessing a Second Amendment challenge. The first prong, reflecting *Heller*'s observation that the Second Amendment embodies rights existing at its ratification, requires our

---

[5] The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

historical review to evaluate whether those rights, as understood in 1791, are "burdened or regulated" by the statute in question. *Chester*, 628 F.3d at 680. If so, under the second prong, the statute must pass constitutional muster in accordance with the appropriate level of judicial scrutiny. *Id. Moore* refined and crystallized our approach, however, explaining that "the *Chester* analysis is more streamlined when a presumptively lawful regulatory measure is under review." *Moore*, 666 F.3d at 318.

In order for [a party] to rebut the presumption of lawfulness regarding § 922(g)(1) as applied to him, he "must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Moore*, 666 F.3d at 319.

*United States v. Smoot*, 690 F.3d 215, 221 (4th Cir. 2012). Our two-step approach in *Chester* derives from the Third Circuit's opinion in *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010). *See Chester*, 628 F.3d at 680–83.

Using our two-step approach, we have rejected challenges to disarmament laws from domestic violence misdemeanants, *United States v. Staten*, 666 F.3d 154 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1937 (2012), persons subject to domestic violence protective orders, *United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012), and undocumented aliens, *United States v. Carpio-Leon*, 701 F.3d 974 (4th Cir. 2012), *cert. denied*, 134 S. Ct. 58 (2013). With respect to felon disarmament provisions, we have rejected challenges from not only felons with "violent" predicate offenses, *e.g.*, *Smoot*, 690 F.3d at 221, but also felons with "non-violent" predicate offenses, *United States v. Pruess*, 703 F.3d 242 (4th Cir. 2012).

The Maryland laws at issue are substantially similar to the federal prohibition on possession of guns by convicted felons found at 18 U.S.C. § 922(g)(1). Thus, our

14

discussion focuses primarily on case law surrounding § 922(g), as the analysis from those cases is equally applicable to the challenged Maryland laws.[6]

The district court determined that Hamilton did not fall within the category of "law-abiding responsible citizens" to whom Second Amendment protections enure, and so ended its inquiry at step one of the streamlined analysis. *Hamilton*, 165 F. Supp. 3d at 326–28. Hamilton's first argument is that the district court did not actually engage with the streamlined analysis of *Moore*. We disagree, finding that Hamilton misreads both our precedent and the district court's opinion.

Hamilton argues that in a streamlined analysis, we "essentially dispense[ ] with the second step in as-applied felon-disarmament challenges," Appellant's Br. at 29, assume there can be no justification for disarming someone who is a "law-abiding, responsible citizen," and evaluate all the factual circumstances of the challenger at step one of the *Chester* inquiry. This is incorrect, and misreads the holding of *Moore*.

The streamlined portion of the analysis as explained in *Moore* is that for a presumptively lawful regulation, at the first step of the Second Amendment inquiry, we need not undertake an extensive historical inquiry to determine whether the conduct at issue was understood to be within the scope of the Second Amendment at the time of ratification. *Moore*, 666 F.3d at 318–19; *see Pruess*, 703 F.3d at 245–46 & n.3

---

[6] Supporting this, the parties and the district court both cited to case law surrounding 18 U.S.C. § 922(g)(1). Further, the Maryland gun laws were expanded to include the disarmament of all felons as opposed to only violent felons on the basis of the federal disqualification. *See Oglesby v. State*, 109 A.3d 1147, 1158 (Md. 2015); *Brown v. Handgun Permit Review Bd.*, 982 A.2d 830, 842–43 (Md. Ct. Spec. App. 2009).

15

("Because the presumption of constitutionality from *Heller* and *Moore* governs, we need not pursue an analysis of the historical scope of the Second Amendment right."). However, as we have recently reaffirmed, we still conduct the traditional second step of applying an appropriate means-end scrutiny even for laws that receive a streamlined analysis. *See United States v. Hosford*, 843 F.3d 161, 167 (4th Cir. 2016) (citing *Woollard v. Gallagher*, 712 F.3d 865, 875 (4th Cir. 2013)).

At the first step, we effectively supplant the historical inquiry with the more direct question of whether the challenger's conduct is within the protected Second Amendment right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635; *Moore*, 666 F.3d at 318–19; *see also Pruess*, 703 F.3d at 245 (explaining that "a presumptively lawful regulation could not violate the Second Amendment unless, as applied, it proscribed conduct 'fall[ing] within the category of . . . *law-abiding responsible* citizens . . . us[ing] arms in defense of hearth and home'" (quoting *Moore*, 666 F.3d at 319) (further internal quotations omitted) (alterations made by quoting source)).

Additionally, we have explained that in an as-applied challenge to a presumptively lawful firearms regulation, "a litigant claiming an otherwise constitutional enactment is invalid as applied to him must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Moore*, 666 F.3d at 320. Indeed, after explaining the streamlined analysis, the court in *Moore* held that Moore's challenge failed at step one of *Chester* because "Moore undoubtedly flunks the 'law-abiding responsible citizen' requirement." *Id.*

16

If Hamilton is able to demonstrate that he is outside the "realm of ordinary challenges," such that his conduct is within the protected right of "law-abiding, responsible citizens to use arms in defense of hearth and home," we are still then required to proceed to the means-end scrutiny discussed in *Chester*. Therefore, the streamlined analysis of *Moore* requires that we determine at step one whether Hamilton is a "law-abiding, responsible citizen," there being no dispute between the parties that he intends to own arms "in defense of hearth and home."[7]

## B.

In arguing for how he is a "law-abiding, responsible citizen," Hamilton relies on dicta from the Third Circuit establishing two categories of felons who might raise successful as-applied challenges and argues that he falls within both: (1) "a felon convicted of a minor, non-violent crime [who] might show that he is no more dangerous

---

[7] Although briefly addressed by the Maryland Defendants, *see* Appellee's Br. at 16–17, our case law appears to consider these as two separate and independent inquiries for which a Second Amendment challenger must plead factual circumstances that remove the challenger's circumstances from the "realm of ordinary challenges." We have rejected challenges as being in the realm of ordinary challenges with respect to "in defense of hearth and home" on the basis that a "fear of being robbed . . . is far too vague and unsubstantiated to remove [a] case from the typical felon in possession case." *Moore*, 666 F.3d at 320; *see Smoot*, 690 F.3d at 222 (rejecting a desire to possess a weapon premised on a tip that "other people were looking for [the defendant]" on the same basis); *see also Pruess*, 703 F.3d at 246 (rejecting desire to possess ammunition primarily for hunting purposes on the same basis). There is some concern that Hamilton's pleaded basis for owning a gun—"self-defense within his own home," J.A. 5 ¶ 1—is precisely the kind of "far too vague and unsubstantiated" fear we have rejected before. In light of what will eventually be a denial of Hamilton's challenge on the basis that he is not a "law-abiding, responsible citizen," we do not address this further.

17

than a typical law-abiding citizen;" and (2) "a felon whose crime of conviction is decades-old [and who] poses no continuing threat to society." *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011), *overruled-in-part by Binderup v. Att'y Gen. U.S.*, 836 F.3d 336 (3d Cir. 2016) (en banc). For the reasons that follow, we today hold that a challenger convicted of a state law felony generally cannot satisfy step one of the *Chester* inquiry, and accordingly disagree that these are bases on which a challenger may attempt to satisfy step one of the *Chester* inquiry.

1.

As the citation indicates, the dicta on which Hamilton relies has been overruled in a recent fractured en banc opinion from the Third Circuit, that "reject[s] [*Barton*'s] claim that the passage of time or evidence of rehabilitation will restore the Second Amendment rights of people who committed serious crimes." *Binderup*, 836 F.3d at 349–50.[8] In overruling *Barton*, the Third Circuit explained that "[a] challenger's risk of violent recidivism tells us nothing about whether he was convicted of a serious crime, and the seriousness of the purportedly disqualifying offense is our sole focus throughout *Marzzarella*'s first step." *Id.* at 350. The court held that "only the seriousness of the

---

[8] This portion of the opinion technically only garnered support from seven of the fifteen judges of the en banc court. However, the overruling of the dicta in *Barton* can be considered the opinion of a majority of the court, because as acknowledged by the court in *Binderup*, three additional judges expressed a desire to overrule *Barton* entirely, finding it wholly irreconcilable with *Marzzarella*, and refused to agree with leaving any portion of *Barton* intact. *See Binderup*, 836 F.3d at 339 n.1.

purportedly disqualifying offense determines the constitutional sweep of statutes like § 922(g)(1) at step one." *Id.*

The Third Circuit in *Binderup* also explained that "to satisfy step one in the context of an as-applied challenge to § 922(g)(1), a challenger must prove that he was not previously convicted of a serious crime . . . [and] evidence of a challenger's rehabilitation or his likelihood of recidivism is not relevant to the step-one analysis." *Id.* at 356. The court relied on the "seriousness" of an offense as the narrowest basis for its holding, determining that the traditional justification for denying felons the right to bear arms stemmed from the disarmament of "unvirtuous citizens" who had committed "serious criminal offense[s]." *Id.* at 348–49. This comports with our Circuit's holding in *United States v. Carpio-Leon*, 701 F.3d 974, 979–80 (4th Cir. 2012), and relies on the same language from *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010), on which we relied in *Carpio-Leon*.[9]

The court in *Binderup* ultimately upheld the as-applied challenges presented, but the court noted that its holding was limited to state-law misdemeanants who nonetheless fall within the sweep of § 922(g)(1). 836 F.3d at 353 n.6 (noting in dicta that a state-law

---

[9] Indeed, the court noted that this Circuit "endorse[s] the 'virtuous citizen' justification for excluding felons and felon-equivalents from the Second Amendment's ambit." *Binderup*, 836 F.3d at 348 (citing, *inter alia*, *Carpio-Leon*, 701 F.3d at 979–80).

felon's "burden would be extraordinarily high—and perhaps insurmountable" to show that the crime was not serious).[10]

2.

We find the main opinion in *Binderup* well-reasoned and thoughtful, but decline to adopt it in its entirety. Rather than adopting the "seriousness" test elucidated in *Binderup* at step one of the *Chester* inquiry, we simply hold that conviction of a felony necessarily removes one from the class of "law-abiding, responsible citizens" for the purposes of the Second Amendment, absent the narrow exceptions mentioned below.

Where the sovereign has labeled the crime a felony, it represents the sovereign's determination that the crime reflects "grave misjudgment and maladjustment," as

---

[10] The court broke down when it came to deriving and applying a standard. A majority of the court voted to find the as-applied challenges successful, but split on the reasoning. Only three judges ultimately signed onto the portion of the opinion relying on the seriousness of the prior convicted offense as the basis for determining whether a challenger satisfies the first step of the two-step inquiry, though the court considers it controlling as the narrowest ruling. *See Binderup*, 836 F.3d at 356. The concurring opinion on behalf of five judges of the court rejected the idea that "virtue" was the underlying cause of felon disarmament and would have held that "non-dangerous persons convicted of offenses unassociated with violence may rebut the presumed constitutionality of § 922(g)(1) on an as-applied basis." *Id.* at 358 (Hardiman, J., concurring-in-part and concurring in judgment). The concurrence would prefer to rest its decision on the violence of the underlying crime rather than the seriousness of the offense, and also rejected overturning the relevant portion of *Barton. Id.* at 361–62, 365–66. The concurrence additionally believed that no means-end scrutiny was needed once the as-applied challenger passed step one of the *Marzzarella/Barton* test when challenging a "presumptively lawful regulation that *entirely bars* the challenger from exercising the core Second Amendment right." *Id.* at 363. This is presumably the position Hamilton is arguing for us to adopt here, and we decline to do so.

20

recognized by the district court. A felon cannot be returned to the category of "law-abiding, responsible citizens" for the purposes of the Second Amendment and so cannot succeed at step one of the *Chester* inquiry, unless the felony conviction is pardoned or the law defining the crime of conviction is found unconstitutional or otherwise unlawful.[11]

By confining the step one analysis to the challenger's criminal history, we consider only the conviction or convictions causing the disability to the challenger. As a result, we also hold that evidence of rehabilitation, likelihood of recidivism, and passage of time are not bases for which a challenger might remain in the protected class of "law-abiding, responsible" citizen.[12]

We reject rehabilitation, recidivism, and passage of time evidence at step one of *Chester* for the additional greater consequences it has on our criminal justice system. Were we to permit this type of evidence on an as-applied Second Amendment challenge, it would invite any criminal defendant charged with a violation of § 922(g) or a state law

---

[11] However, we leave open the possibility that persons who are not convicted of felonies, but otherwise fall within the sweep of what we refer to as "felon disarmament laws," such as persons convicted of crimes labeled as a misdemeanors, but punishable by a term of prison such that the misdemeanor falls within the sweep of a felon disarmament law, may still potentially succeed at step one of the *Chester* inquiry.

[12] We expressly do not close these off as being potentially relevant inquiries in bringing as-applied challenges to other disarmament laws, for example, laws disarming the mentally ill such as 18 U.S.C. § 922(g)(4) and Md. Code Ann., Pub. Safety § 5-133(b)(7), (9), & (10). Indeed, the Sixth Circuit has recently held that a person who was involuntarily committed thirty years ago during a brief depressive episode successfully proved that 18 U.S.C. § 922(g)(4), the federal disarmament provision for the mentally ill, was unconstitutional as applied to him using a highly similar two-step analysis. *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) (en banc).

analogue to argue what is essentially jury nullification. The criminal defendant would be able to freely admit violation of the law in the past, but request that the jury not convict on the grounds of rehabilitation, unlikeliness of re-offending, or the length of time that had passed since conviction. We do not believe that the Second Amendment so requires in the context of felony convictions.

## C.

Having clarified the standard applicable to Hamilton's challenge, we now apply our two-step approach to the circumstances of this case, and find that Hamilton fails at step one of the *Chester* inquiry. Hamilton cannot rebut the presumption that he falls outside the category of "law-abiding, responsible citizens," and so cannot succeed in his as-applied challenge.

### 1.

The district court found it dispositive that Hamilton was convicted of three different felonies under Virginia law that it considered serious property crimes, regardless of their non-violent nature. *See Hamilton*, 165 F. Supp. 3d at 326. Because Hamilton's theft and fraud crimes were "black-letter *mala in se* felonies reflecting grave misjudgment and maladjustment," the district court found no possibility that he was a "law-abiding, responsible citizen." *Id.* The court further rejected the contention that merely having committed non-violent offenses meant that Hamilton should be considered a "law-abiding, responsible citizen." *Id.* at 326–27.

22

The district court's findings comport with our holding today. Hamilton's commission of theft and fraud crimes resulting in over $1,200.00 in court-ordered restitution that are considered to be felonies by Maryland is dispositive of his challenge.[13] Theft, fraud, and forgery are not merely errors in filling out a form or some regulatory misdemeanor offense; these are significant offenses reflecting disrespect for the law.[14]

Hamilton is a state law felon, has not received a pardon, and the basis for his conviction has not been declared unconstitutional or otherwise unlawful. As such, he cannot state a claim for an as-applied Second Amendment to Maryland's regulatory scheme for handguns and long guns.

2.

Finally, Hamilton submits that his (1) restored firearms rights in Virginia; and (2) ability to possess firearms in the course of his employment as not only an armed guard in

---

[13] The fact that both Virginia, where Hamilton committed the crime, and Maryland, the disarming state, consider at least two of the charges to be felonies only underscores this point.

[14] Hamilton tries to paint these crimes in the least negative light, saying that he "had agreed to let an individual buy him a laptop on a stolen credit card." Appellant's Br. at 5. However, Hamilton does nothing to counter the conclusion that these reflect significant disrespect for the law, neglecting the fact that stolen credit cards damage not only the actual cardholder, but also the merchant from whom the merchandise was purchased and the bank that issued the card. Hamilton additionally argues that because he has pleaded that he is "responsible" and "law-abiding" we must accept these characteristics as true on a motion to dismiss. This is incorrect. These are more appropriately considered "legal conclusions drawn from the facts" which we strike and disregard on a motion to dismiss. *See Kloth*, 444 F.3d at 319.

Virginia but also as an armed Protective Services Officer for DHS in Washington, D.C. will work absurd results should we reject his challenge. However, the apparently absurd result does not ultimately affect the outcome of this case, and neglects to consider the impact of federalism on his challenge.

For the purposes of Maryland law, Hamilton is deemed a felon. Maryland has determined that unless and until Virginia issues Hamilton a full pardon, he will continue to be deemed a felon in Maryland. In our federal system, each state is permitted to create its own laws so long as they do not run afoul of the Constitution, federal laws, and treaties, *see* U.S. Const. art. VI, cl. 2., specifically as relevant here, the Second Amendment. Virginia may have opted to restore Hamilton's gun ownership rights within its borders, but Maryland need not do so within its own borders.[15] Maryland has opted to enforce its own requirement that Hamilton has not yet met, namely, that the disabling felony be pardoned by the executive in the jurisdiction wherein Hamilton was convicted.

Further, the restoration of firearms rights to a felon in Virginia appears to be a rather pro forma matter. Once a felon has had his or her rights restored by the Governor, that person may then petition the court for a permit to possess or carry firearms in Virginia, which the court "may, in its discretion and for good cause shown" grant. Va.

---

[15] Amicus Gun Owners of America, Inc. attempts to argue otherwise based on the Full Faith and Credit Clause. Both parties have disavowed such an argument, and we agree it is incorrect. "The Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998) (quoting *Pac. Emp'rs Ins. Co. v. Indus. Accident Comm'n*, 306 U.S. 493, 501 (1939)).

Code § 18.2-308.2(C). The order entered here by the Spotsylvania County Circuit Court indicates no special factors related specifically to Hamilton; rather, the order merely indicates that Hamilton met the statutory requirements in the Commonwealth of Virginia, and as such restored his right to possess firearms within the boundaries of the Commonwealth. J.A. 24.

With respect to his ability to possess arms in the course of his employment, this again is a matter of different sovereigns making different determinations about gun ownership rights, bound only by the strictures of the Second Amendment. Although Virginia and DHS have determined that Hamilton may be armed in his employment, this additionally entails acting under supervision and ultimately under some form of accountability to another person.

None of this mandates that Maryland must permit Hamilton to be armed in his home, nor does it make Hamilton "law-abiding," although it may provide some evidence that he is "responsible." It further underscores the reasons different sovereigns may have to permit a person to be armed in certain contexts, and possibly not in others.

V.

In sum, today we hold that a state law felon cannot pass the first step of the *Chester* inquiry when bringing an as-applied challenge to a law disarming felons, unless that person has received a pardon or the law forming the basis of conviction has been declared unconstitutional or otherwise unlawful. Relatedly, we hold that evidence of rehabilitation, the likelihood of recidivism, and the passage of time may not be

25

considered at the first step of the *Chester* inquiry as a result. Hamilton thus fails at step one of the *Chester* analysis. Accordingly, for the foregoing reasons, the judgment of the district court is

AFFIRMED.