**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1141**

MARY DAVID,

Plaintiff - Appellant,

v.

WINCHESTER MEDICAL CENTER, a/k/a Valley Health System Winchester Medical Center,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Michael F. Urbanski, Chief District Judge. (5:16-cv-00063-MFU-JCH)

Argued: December 12, 2018                                    Decided: January 11, 2019

Before WILKINSON, MOTZ, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Blackwell N. Shelley, Jr., SHELLEY CUPP SCHULTE, P.C., Richmond, Virginia, for Appellant. Andrew Seth Baugher, LENHART PETTIT PC, Harrisonburg, Virginia, for Appellee. **ON BRIEF:** Cathleen P. Welsh, LENHART PETTIT PC, Harrisonburg, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mary David worked as an at-will nursing director at Winchester Medical Center ("WMC"). On September 3, 2014, WMC informed David that she could not maintain her employment there. The overarching dispute here is whether WMC dismissed David because she was reporting misbehavior or because she herself was misbehaving.

After her dismissal, David brought two claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). First, David alleged that WMC discriminated against her by disciplining her more harshly than a male doctor. Second, she alleged that her complaints against that doctor qualified as protected activity and that WMC retaliated by dismissing her. In a careful, written opinion, the district court rejected those claims at summary judgment. *David v. Winchester Med. Ctr.*, No. 5:16-CV-00063, 2018 WL 310140, at *1 (W.D. Va. Jan. 5, 2018). We affirm on the basis of that opinion as to those claims.

David also brought a third claim under Title VII, as well as the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* She alleged that she engaged in protected activity by declining WMC's severance agreement, which caused WMC to retaliate by assertedly withholding the value of her paid time off ("PTO"), classifying her dismissal as a termination, and "backdat[ing]" her last work day. The district court granted WMC's motion to dismiss this retaliation claim, explaining its reasoning and issuing its ruling from the bench. David did not include a transcript of this hearing in the record she submitted to us. For that reason, we briefly address this claim.

2

We review de novo the district court's dismissal of David's severance-related claim under Rule 12(b)(6). *See Hamilton v. Pallozzi*, 848 F.3d 614, 620 (4th Cir. 2017). We assume the factual allegations in David's complaint are true, and we draw all reasonable inferences in her favor. *Id.* However, we need not accept any "unwarranted inferences" or "unreasonable conclusions." *Id.* Additionally, we may consider a document "that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). If a conflict exists "between the bare allegations of the complaint and any exhibit attached," then the "exhibit prevails." *Id.* (internal quotation marks omitted).

For David to state a retaliation claim, she must plead "that she engaged in a protected activity" and that, as a result, WMC "took an adverse employment action against her." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (internal quotation marks omitted). The denial of a severance benefit is adverse when the benefit is "part and parcel of the employment relationship," even if the employer is otherwise free not to provide the benefit at all. *Gerner v. County of Chesterfield*, 674 F.3d 264, 267 (4th Cir. 2012) (internal quotation marks omitted).

David alleges two interrelated retaliatory adverse employment actions. First, she argues that she was entitled to continued severance negotiations and that WMC harmed her by "withdr[awing its] offer of a severance payment." Second, she claims that she was harmed when WMC reprocessed "her separation from employment as an involuntary termination, rather than a resignation," and then withheld the monetary value of her

3

accrued PTO. David believes that she is entitled to that sum because she offered to resign effective October 3, 2014 — that is, one month after WMC expressed its intent to sever their employment relationship. We address each action in turn.

David claims that WMC pulled out of severance negotiations after she asserted her rights under various discrimination statutes. But WMC did not withdraw its severance offer. Rather, David declined it. She did so in explicit terms in a September 18, 2014 letter from her attorney to WMC's counsel, a letter which David referenced in her complaint. That letter clearly states that David "rejects the proposed severance agreement" and "intends to assert claims" against WMC.

Because David rejected the proposed agreement, WMC took no adverse action *against* her when it simply accepted this rejection and declined to initiate further negotiations. There is no adverse employment action when an employer declines to pay discretionary severance benefits because a terminated employee "refused to sign" a separation agreement. *EEOC v. SunDance Rehab. Corp.*, 466 F.3d 490, 501 (6th Cir. 2006); *accord EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 452 (3d Cir. 2015).

It would be different if WMC revoked the offer upon David's mere mention of her legal rights. The D.C. Circuit addressed such a situation in *Paquin v. Federal National Mortgage Association*, where an employer was alleged to have rescinded its offer after receiving a letter "in which [the employee] claimed that his termination was based on age and that he was prepared to take legal action if acceptable severance terms were not offered." 119 F.3d 23, 31 (D.C. Cir. 1997). The court held that an employer's "withdrawal of its severance package offer" qualifies as an adverse action, because the

4

employer is revoking a possible benefit. *Id.* at 32. But here, no such revocation occurred. Because David turned down the deal, WMC's decision not to persist in negotiations does not qualify as an adverse action taken against her.

David's second contention — that her offer of an eventual October resignation caused her PTO to vest — is also unpersuasive. David's pleadings do not allow us to conclude that she was ever entitled to a PTO payment.

To hold otherwise, we would have to accept that WMC initially processed David's dismissal as a voluntary resignation, under which she may have been eligible for a PTO payment, and then reclassified this dismissal as a termination after David asserted her legal rights. But the severance agreement that WMC provided David, an agreement that she referenced in her complaint, states exactly the opposite. WMC offered to "retroactively reclassify her termination as a voluntary resignation" *if* she agreed to WMC's terms of *immediate* resignation and waiver of liability, which she did not do. Likewise, the September 18, 2014 letter from David's counsel to WMC similarly (and repeatedly) referred to her dismissal as a "termination" rather than a "resignation."

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.