**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2571
_____

TIMOTHY KING,
                    Appellant

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA; DIRECTOR BUREAU OF
ALCOHOL TOBACCO FIREARMS & EXPLOSIVES
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 5-17-cv-00884)
District Judge:  Honorable Jeffrey L. Schmehl

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 27, 2019

Before:  CHAGARES, GREENAWAY, JR., and GREENBERG, <u>Circuit</u> <u>Judges</u>.

(Filed: July 25, 2019)

_____

OPINION[*]
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Timothy King alleges that 18 U.S.C. § 922(g)(1), which bars felons from possessing firearms, is unconstitutional under the Second Amendment as applied to him. The District Court dismissed King's complaint, and we will affirm.

I.

Section 922(g)(1) prohibits anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] in or affecting commerce, any firearm or ammunition." Id. That provision currently prevents Timothy King from owning a gun, due to crimes he committed on two occasions.

First, in 1982, King was convicted under Pennsylvania law of selling a firearm without the requisite Pennsylvania license. He was convicted, specifically, of (1) carrying firearms without a license, in violation of 18 Pa. Cons. Stat. § 6106; (2) carrying firearms in a public street or place, in violation of 18 Pa. Cons. Stat. § 6108; (3) unlawfully selling firearms, in violation of 18 Pa. Cons. Stat. § 6111; (4) selling firearms as a retail dealer without a license, in violation of 18 Pa. Cons. Stat. § 6112; (5) committing unlawful lending practices with respect to a firearm, in violation 18 Pa. Cons. Stat. § 6155; and (6) engaging in criminal conspiracy, in violation of 18 Pa. Cons. Stat. § 903. King was ultimately sentenced to two years of probation and a fine, but, because his crimes carried a maximum sentence of five years, see 18 Pa. Cons. Stat. § 1104, he became subject to the restrictions of § 922(g)(1).

Second, in 1992, King pled guilty to three federal crimes: (1) making a false statement in the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6); (2)

receiving a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and (3) possessing firearms as a convicted felon, also in violation of § 922(g)(1). He was sentenced to three years of probation and a fine. But because violations of § 922(a)(6) and (g)(1) are punishable by imprisonment of up to ten years, 18 U.S.C. § 924(a)(2), King's federal crimes also subject him to the gun ownership restrictions of § 922(g)(1).

In 2017, King sued the Attorney General of the United States, claiming that § 922(g)(1), as applied, violates his right under the Second Amendment to keep and bear arms. The Attorney General moved to dismiss, and the District Court granted the motion. The District Court, applying the framework we announced in United States v. Marzzarella, 614 F.3d 85 (2010), held that King had not provided evidence sufficient to sustain an as-applied to challenge to § 922(g)(1). King timely appealed.[1]

## II.

The Supreme Court, in District of Columbia v. Heller, 554 U.S. 570, 595 (2008), held that "the Second Amendment conferred an individual right to keep and bear arms." But the Court in Heller also explained that "the right secured by the Second Amendment is not unlimited," and that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. Our review of an as-applied constitutional challenge is plenary. Marzzarella, 614 F.3d at 88 n.2.

Id. at 626.  Such "regulatory measures," among others, are "presumptively lawful."  Id. at

627 n.26.

Following Heller, we considered an as-applied Second Amendment challenge in

Marzzarella.  There, we read Heller as suggesting a two-step approach to assessing as-

applied Second Amendment challenges.  614 F.3d at 89.  At the first step, we ask

"whether the challenged law imposes a burden on conduct falling within the scope of the

Second Amendment's guarantee."  Id.  If it does not, the as-applied challenge fails.  If it

does, we proceed to step two, which involves "evaluat[ing] the law under some form of

means-end scrutiny."  Id.

We clarified that two-step approach in Binderup v. Att'y Gen., 836 F.3d 336 (3d

Cir. 2016) (en banc).  There, as here, we faced an as-applied Second Amendment

challenge to § 922(g)(1).  Id. at 339.  Judge Ambro's controlling opinion[2] explained that,

under step one of Marzzarella, the challenger "must (1) identify the traditional

justifications for excluding from Second Amendment protections the class of which he

appears to be a member . . . and then (2) present facts about himself and his background

that distinguish his circumstances from those of persons in the historically barred class."

Id. at 347.  To meet those requirements "in the context of an as-applied challenge to §

---

[2] Our decision in Binderup was fractured.  A majority of the en banc Court agreed that
the as-applied Second Amendment challenge succeeded, but "no single rationale
explaining the result enjoy[ed] the support of a majority of the Court."  Id. at 356.
Accordingly, the holding in Binderup "may be viewed as that position taken by those
Members who concurred in the judgments on the narrowest grounds."  Id. (quoting
Marks v. United States, 430 U.S. 188, 193 (1977)).  In Binderup, Judge Ambro's opinion
provided the narrowest ground supporting the result in that case.  We therefore treat
Judge Ambro's opinion as controlling and apply it here.  See id. at 356.

922(g)(1)," the challenger must "prove that he was not previously convicted of a serious crime." Id. at 356.

King fails to meet that requirement because his federal convictions under 18 U.S.C. § 922(a)(6) and (g)(1) were for serious crimes. To begin with, each is classified as a felony under federal law, see 18 U.S.C. §§ 924(a)(2), 3559(a), and the controlling opinion in Binderup noted that such a classification is significant, see 836 F.3d at 353 n.6. Indeed, "[w]hen the legislature designates a crime as a felony, it signals to the world the highest degree of societal condemnation for the act, a condemnation that a misdemeanor does not convey." Medina v. Whitaker, 913 F.3d 152, 160 (D.C. Cir. 2019); see also Hamilton v. Pallozzi, 848 F.3d 614, 626 (4th Cir. 2017) (same).

The controlling opinion in Binderup, to be sure, did note that "it is possible to read Heller to leave open the possibility, however remote, of a successful as-applied challenge" to a conviction for a crime labeled as a felony. 836 F.3d at 353 n.6. But the controlling opinion also explained that in such a situation "the individual's burden would be extraordinarily high — and perhaps even insurmountable." Id.

King cannot meet that difficult burden here. King argues that his actual sentence (three years of probation) relative to the maximum potential sentences for violating 18 U.S.C. § 922(a)(6) and (g)(1) (ten years for both, see 18 U.S.C. § 924(a)(2)) belies the seriousness of his federal felony convictions. And, King points out, his federal crimes were not violent. It is true that the challenger's actual sentence and the non-violent nature of the crimes were relevant factors in Binderup. See 836 F.3d at 352. But we do not think they alter the outcome here. The controlling opinion in Binderup explicitly

5

limited its ruling to "state-law misdemeanants," explaining that "when a legislature chooses to call a crime a misdemeanor, we have an indication of non-seriousness that is lacking when it opts instead to use the felony label." Id. at 353 n.6. Unlike the defendants in Binderup, King was convicted of crimes labeled as felonies, not misdemeanors, which makes his burden all the higher. See id. We are not persuaded that King's actual sentence and the non-violent nature of his crimes outweigh the fact that Congress chose to classify his crimes as felonies, punishable by up to ten years in prison.[3]

King's other arguments are unpersuasive. King argues that his convictions under § 922(a)(6) and (g)(1) were based on "underlying state convictions [that] are not sufficiently serious to justify preventing him from exercising his Second Amendment rights." King Br. 27. We need not decide whether King's state convictions were for "serious crimes" themselves because, even assuming they were not, the non-seriousness of King's state crimes would not make his federal crimes any less serious. Regardless of the seriousness of his state crimes, King was still prohibited under federal law from possessing a firearm, and from making false statements in acquiring one. And King pled guilty to violating those laws. The seriousness of King's state-law convictions is thus immaterial; he still committed serious crimes under federal law.

King also challenges the seriousness of his federal crimes by pointing to the circumstances surrounding them. He claims that he just "improperly indicated that he

_____

[3] Not to mention that King has not shown that the final factor discussed in Binderup — "cross-jurisdictional consensus regarding the seriousness of the . . . crimes" — helps him here. Id. at 352.

6

had not been convicted of an offense punishable by over a year incarceration." King Br. 29. He further claims that he did not realize that § 922(g) applied to him, given that he was enrolled in the military at the time. But to the extent that those individualized circumstances are relevant, we think that the particular circumstances of King's crimes are adequately reflected in the actual sentence he received. See Binderup, 836 F.3d at 352 ("[P]unishments are selected by judges who have firsthand knowledge of the facts and circumstances of the cases and who likely have the benefit of pre-sentence reports prepared by trained professionals."). And as explained, King's relatively light sentence does not change our conclusion that he was convicted here for serious crimes.

Finally, King argues that he "poses no more a threat to society than any other ordinary citizen," and that his convictions are "distant history." King Br. 30. But the controlling opinion in Binderup rejected the "claim that the passage of time or evidence of rehabilitation will restore the Second Amendment rights of people who committed serious crimes." Binderup, 836 F.3d at 349.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.

7