HUNTER, JR., Robert N., Judge.
 

 *539
 
 Victor Manuel Fernandez ("Defendant") appeals his conviction of possession of a firearm by a felon. Defendant contends
 
 *540
 

 N.C. Gen. Stat. § 14-415.1
 
 , which generally prohibits felons from possessing firearms, was unconstitutional as applied to him. We disagree and find no error in the trial court's judgment.
 

 I. Factual and Procedural Background
 

 On 19 September 2016, Defendant was indicted for possession of a firearm by a felon under
 
 N.C. Gen. Stat. § 14-415.1
 
 (2016).
 

 On 10 October 2016, Defendant filed a motion to dismiss the indictment contending
 
 N.C. Gen. Stat. § 14-415.1
 
 is unconstitutional as applied to him. In the alternative, Defendant contended the trial court should suppress the results of an illegal search. The State did not file a written response to this motion. Counsel for Defendant subsequently moved to withdraw for health reasons. On 13 October 2016, the trial court allowed defense counsel's motion to withdraw and appointed another attorney.
 

 Defendant's case was called for trial on 14 November 2016. On that same day, Defendant filed a motion to suppress the State's evidence on the grounds the evidence "was obtained in violation of federal and state constitutional rights to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sec. 20 of the North Carolina Constitution." Defendant also alleged the State obtained its evidence in violation of N.C. Gen. Stat. § 15A-974.
 

 After jury selection, the trial court excused the jurors to address these pre-trial matters with counsel. Defendant first asked the court to dismiss the case based on the State's failure to respond to Defendant's motion to dismiss. The trial court responded Defendant's prior counsel failed to sign Defendant's motion to dismiss. The trial court stated, "[n]ot only is it not signed ... I am going to deny it. I will find that the statute itself is constitutional, and it is constitutional as it applies to this defendant."
 

 The trial court next addressed Defendant's motion to suppress based on the Fourth Amendment. The State called Deputy Josh Biddix ("Biddix") with the Mitchell County Sheriff's Office. Defendant called the Sheriff's Office to report someone had broken into his home. While personnel from the Sheriff's Office spoke with Defendant, Biddix recognized Defendant's name and thought he had "a status as a convicted felon." Biddix checked his computer "before we went any further." Defendant reported "a couple of rifles" were stolen, along with other valuables and cash. After confirming Defendant's status as a convicted felon, Biddix explained to Defendant "we could not return the guns to him even if we were able to find the stolen weapons."
 

 *541
 
 Biddix and Deputy Hobson ("Hobson") went to Defendant's residence to investigate the break-in:
 

 [Defendant] came to the door, asked us to come in, told us what had happened, showed us where the back door to his residence had been pushed open, kicked in, and then started to show us where different things had been taken from in the house, uh, some of his valuables, showed us where they'd been stored before they had been stolen.
 

 The two officers and Defendant made their way to Defendant's bedroom. Once in the bedroom, Hobson "pointed out an object to [Biddix] on the floor ... which [Biddix] was almost, about ready to step on at that point." Biddix stated "[i]t was partially covered by clothes but enough of it was sticking out to see ... a shotgun." Biddix first finished his report to give to a Detective, and then "placed [Defendant] in handcuffs and fingerprinted him." Biddix next took Defendant to a magistrate.
 

 During cross, Biddix stated he did not have a search warrant.
 

 The State rested, and Defendant offered no evidence. The State then argued for the dismissal of Defendant's motion to suppress. The State contended "this is not a search as
 
 *365
 
 contemplated by the Fourth Amendment. This was law enforcement investigating a crime that [Defendant] had reported. Counsel for Defendant responded:
 

 [A] search is invalid if there's no search warrant. That's where the courts start, at an invalid search. And Your Honor, this is absent exigent circumstances which State's failed to prove. They could've gotten a warrant, easily gone out and got a search warrant, chose not to do so. My client shouldn't have to suffer for that.
 

 ....
 

 If they move something to determine its nature, even though it's, even though the deputy said that she seen [sic] the butt sticking out, still had to move his clothing, that creates a search within the meaning of the Fourth Amendment. This was a search, invalid without a search warrant, and we'd ask the Court to dismiss.
 

 The trial court denied Defendant's motion to suppress on the ground "[o]nce the officer observed it, she certainly had the right to pick up what she determined to be a rifle for her own protection."
 

 *542
 
 The trial began the following morning. The State first called Hobson. She recalled Defendant reporting a breaking and entering, and Defendant's request for the Sheriff's Department to come to his home to investigate. While on the telephone with Hobson, Defendant advised Hobson "that he knew that he was a convicted felon[.]" Counsel for Defendant objected, and the trial court excused the jury.
 

 Counsel for Defendant "object[ed] to any statements regarding prior bad acts, anything that would indicate a bad act, possession of a firearm by a felon, anything of that nature." Defense based this objection on "Rule 404(b), due process, the Fifth and Fourteenth Amendment, [and] Article I, Section 19 of the North Carolina Constitution." The trial court responded the witness's testimony "was that the defendant acknowledged to her that he knew he was a convicted felon, and that's a statement of your client. That's not her statement." Defendant "just made an admission." The trial court concluded, "as far as the objection to testimony as to what the defendant said, that objection is overruled."
 

 Hobson continued her testimony and described entering Defendant's bedroom as part of her investigation of the breaking and entering. "[T]he room was in pretty much disarray. There was clothing everywhere and piled up clothing as well." Under the clothing, Hobson saw part of a shotgun butt and barrel. "I picked the shotgun up out of the floor for my safety and advised the lieutenant we had a firearm in possession." Hobson asked Defendant if the firearm belonged to him, and Defendant answered "yes."
 

 The State next called Biddix. Biddix recognized Defendant's name from Defendant's felony conviction approximately ten years ago. Outside the jury's presence, the State noted it did not have "any reason to call anyone from the clerk's office. [Defense counsel and the State] agree[d] [Defendant] doesn't have any issue with us just admitting the certified judgment and allowing Lieutenant Biddix to testify as to his involvement in [Defendant's prior felony]."
 

 The jury returned. Biddix assisted in an investigation over ten years ago, and as a result, Defendant was charged with having a weapon of mass destruction. "It was actually a sawed-off shotgun." Biddix confirmed Defendant pled guilty to that charge.
 

 Prior to Biddix's arrival at Defendant's residence, Biddix informed Defendant over the telephone Defendant's stolen guns could not be returned because Defendant was a convicted felon. Therefore, Defendant "knew better than to have a gun in the house." Once Biddix arrived at Defendant's residence, Biddix asked Defendant if he had any other firearms in the house. Defendant answered no.
 

 *543
 
 The State then introduced a certified copy of the Mitchell County Judgment where Defendant was previously convicted of felony possession of a weapon of mass destruction.
 

 The State rested. The trial court excused the jury and defense counsel moved "that the evidence was insufficient on every element of the offense in violation of the Sixth and Fourteenth Amendments." Defendant also moved to "dismiss based upon the Second Amendment of the United States Constitution, [and]
 

 *366
 
 Article I, Section 30 of the North Carolina Constitution. The defendant contends that North Carolina General Statute 14-415.1 is unconstitutional as applied to Defendant." Defense counsel concluded by stating, "[a] written motion is in the file, and the defendant does not wish to be heard further."
 

 The State did not wish to be heard on the motion to dismiss.
 

 The trial court stated, "the motion to dismiss is denied on all the grounds."
 

 After the court satisfied itself Defendant understood his right not to testify, defense counsel "renew[ed] our motions as I stated earlier at the end of all the evidence."
 

 After closing arguments, the trial court instructed the jury. Following deliberations, the jury returned a verdict of guilty of possession of a firearm by a felon.
 

 As to sentencing, the trial court stated:
 

 [I]n this matter, the defendant having been found guilty by a jury of possession of a firearm by a felon, that is a class G felony, Court finds it's been stipulated to by the parties that the defendant is a prior record level III having six points. The Court makes no findings because the prison term imposed is within the presumptive range of sentencing.
 

 It's the judgment of the Court the defendant be incarcerated for a minimum of 17, a maximum of 30 months in the North Carolina Department of Adult Corrections.
 

 Defendant appealed in open court.
 

 II. Standard of Review
 

 "The standard of review for questions concerning constitutional rights is
 
 de novo.
 
 Furthermore, when considering the constitutionality of a statute or act there is a 'presumption in favor of constitutionality, and
 
 *544
 
 all doubts must be resolved in favor of the act.' "
 
 Row v. Row
 
 ,
 
 185 N.C. App. 450
 
 , 454-55,
 
 650 S.E.2d 1
 
 , 4 (2007) (citations, quotation marks, and ellipses omitted),
 
 disc. review denied,
 

 362 N.C. 238
 
 ,
 
 659 S.E.2d 741
 
 ,
 
 cert. denied
 
 ,
 
 555 U.S. 824
 
 ,
 
 129 S.Ct. 144
 
 ,
 
 172 L.Ed. 2d 39
 
 (2008).
 

 Our State Supreme Court has held "regulation of the right to bear arms is a proper exercise of the General Assembly's police power, but that any regulation must be at least 'reasonable and not prohibitive, and must bear a fair relation to the preservation of the public peace and safety.' "
 
 Britt v. State
 
 ,
 
 363 N.C. 546
 
 , 549,
 
 681 S.E.2d 320
 
 , 322 (2009) (quoting
 
 State v. Dawson
 
 ,
 
 272 N.C. 535
 
 , 547,
 
 159 S.E.2d 1
 
 , 10 (1968) ).
 

 The United States Supreme Court declined to establish a specific level of scrutiny for regulations that restrict Second Amendment rights.
 
 See
 

 District of Columbia v. Heller
 
 ,
 
 554 U.S. 570
 
 , 635,
 
 128 S.Ct. 2783
 
 , 2821,
 
 171 L.Ed. 2d 637
 
 , 683 (2008). "The Fourth Circuit Court of Appeals has consistently applied intermediate scrutiny."
 
 Johnston v. State
 
 ,
 
 224 N.C. App. 282
 
 , 294,
 
 735 S.E.2d 859
 
 , 869 (2012),
 
 aff'd per curiam,
 

 367 N.C. 164
 
 ,
 
 749 S.E.2d 278
 
 (2013) ;
 
 See, e.g.,
 

 U.S. v. Masciandaro
 
 ,
 
 638 F.3d 458
 
 , 471 (4
 
 th
 
 Cir. 2011),
 
 cert. denied
 
 ,
 
 565 U.S. 1058
 
 ,
 
 132 S.Ct. 756
 
 ,
 
 181 L.Ed. 2d 482
 
 (2011). Intermediate scrutiny requires "the asserted governmental end to be more than just legitimate, either 'significant,' 'substantial,' or 'important' ... [and] require the fit between the challenged regulation and the asserted objective be reasonable, not perfect."
 
 Johnston
 
 at 294,
 
 735 S.E.2d at 859
 
 (quoting
 
 U.S. v. Marzzarella
 
 ,
 
 614 F.3d 85
 
 , 98 (3
 
 rd
 
 Cir. 2010),
 
 cert. denied,
 

 562 U.S. 1158
 
 ,
 
 131 S.Ct. 958
 
 ,
 
 178 L.Ed. 2d 790
 
 (2011) ) (alterations in original).
 

 III. Analysis
 

 Defendant contends the trial court erred in denying his motion to dismiss on the ground his individual right to keep and bear arms under the Second and Fourteenth Amendments of the United States Constitution and under Article I, Section 30 of the North Carolina Constitution is a fundamental right that has been violated because
 
 N.C. Gen. Stat. § 14-415.1
 
 prohibits him from keeping firearms in his home. Defendant challenges
 
 N.C. Gen. Stat. § 14-415.1
 
 , the Felony Firearms Act, as applied to him.
 

 N.C. Gen. Stat. § 14-415.1
 
 (2017) provides:
 

 (a) It shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon of mass death and destruction as defined in
 
 *367
 
 G.S. 14-288.8(c). For the purposes of this section, a firearm is (i) any weapon, including a starter gun, which will or is designed
 
 *545
 
 to or may readily be converted to expel a projectile by the action of an explosive, or its frame or receiver, or (ii) any firearm muffler or firearm silencer. This section does not apply to antique firearm, as defined in G.S. 14-409.11.
 

 A. Defendant's Federal Constitutional Claim
 

 In
 
 Johnston
 
 this Court addressed whether the Felony Firearms Act was constitutional under the Second Amendment of the Federal Constitution as applied to the plaintiff.
 

 Id.
 

 at 294
 
 ,
 
 735 S.E.2d at 869
 
 . This Court applied a two-prong test articulated by the Fourth Circuit in
 
 U.S. v. Chester,
 

 628 F.3d 673
 
 (4
 
 th
 
 Cir. 2010). As to the first prong:
 

 The first question is whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. This historical inquiry seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification. If it was not, then the challenged law is valid. If the regulation burdens conduct that was within the Second Amendment's scope at the time the Second Amendment was ratified, then we move to the second step of applying an appropriate form of means-end scrutiny.
 

 Johnston
 
 at 290,
 
 735 S.E.2d at 866-67
 
 (quoting
 
 Chester,
 

 628 F.3d at
 
 680 ) (internal citations and quotation marks omitted). As to the second prong, "the State must demonstrate a substantial government objective."
 
 Johnston
 
 at 295,
 
 735 S.E.2d at 869
 
 . Additionally, "the State must demonstrate a reasonable fit between the Act and the objective of ensuring the public safety."
 
 Id.
 
 at 295,
 
 735 S.E.2d at 869
 
 . However, in
 
 Johnston,
 
 this Court ultimately could not conclude, based on the record before it, "that the State carried the burden of establishing a reasonable fit and a substantial relationship between the important goal of ensuring public safety and the Act."
 
 Id
 
 . at 295,
 
 735 S.E.2d at 870
 
 .
 

 Since this Court's opinion in
 
 Johnston,
 
 the Fourth Circuit "streamlined" its analysis when "a presumptively lawful regulatory measure is under review."
 
 Hamilton v. Pallozzi
 
 ,
 
 848 F.3d 614
 
 , 623 (4
 
 th
 
 Cir. 2017),
 
 petition for cert. filed,
 
 --- U.S.L.W. ---- (U.S. June 20, 2017) (No. 16-1517).
 
 [1]
 
 Under this "streamlined" portion of the analysis, "[the Fourth
 
 *546
 
 Circuit] effectively supplant[s] the historical inquiry with the more direct question of whether the challenger's conduct is within the protected Second Amendment right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.' "
 
 Hamilton
 
 at 624 (quoting
 
 District of Columbia v. Heller
 
 ,
 
 554 U.S. 570
 
 , 635,
 
 128 S. Ct. 2783
 
 , 2821,
 
 171 L.Ed. 2d 637
 
 , 683 (2008) ). The Fourth Circuit then concluded, "we simply hold that conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment."
 
 Hamilton
 
 at 626. That Court reasoned:
 

 Where the sovereign has labeled the crime a felony, it represents the sovereign's determination that the crime reflects "grave misjudgment and maladjustment," as recognized by the district court. A felon cannot be returned to the category of "law-abiding, responsible citizens" for the purposes of the Second Amendment and so cannot succeed at step one of the
 
 Chester
 
 inquiry, unless the felony conviction is pardoned or the law defining the crime of conviction is found unconstitutional or otherwise unlawful.
 

 Id
 
 . at 626.
 

 In
 
 Hamilton
 
 , the plaintiff sought a declaration as to whether Maryland's firearms regulatory scheme prohibiting anyone who has been "convicted of a disqualifying crime"
 
 [2]
 
 from possessing a firearm violated the Second Amendment as applied to him.
 

 *368
 

 Id.
 

 at 618
 
 . There, the Fourth Circuit stated, "[plaintiff] is a state law felon, has not received a pardon, and the basis for his conviction has not been declared unconstitutional or otherwise unlawful. As such, he cannot state a claim for an as-applied Second Amendment to Maryland's regulatory scheme for handguns and long guns."
 

 Id.
 

 at 628
 
 . Therefore, the Fourth Circuit concluded:
 

 [A] state law felon cannot pass the first step of the
 
 Chester
 
 inquiry when bringing an as-applied challenge to a law disarming felons, unless that person has received a pardon or the law forming the basis of conviction has been declared unconstitutional or otherwise unlawful. Relatedly, we hold that evidence of rehabilitation, the likelihood of recidivism, and the passage of time may not be considered at the first step of the
 
 Chester
 
 inquiry as a result.
 

 Id.
 

 at 629
 
 . Like the plaintiff in
 
 Hamilton,
 
 Defendant in this case is a convicted felon. He therefore cannot show he is a "law-abiding, responsible
 
 *547
 
 citizen" under
 
 Hamilton
 
 , or rebut the challenged Act's presumption of lawfulness. Under our
 
 de novo
 
 review, Defendant cannot pass the first prong of the
 
 Hamilton
 
 analysis. We need not address the second prong of the analysis.
 

 B. Defendant's State Constitutional Claim
 

 As for an as-applied State constitutional challenge to
 
 N.C. Gen. Stat. § 14-415.1
 
 , this Court "must determine whether, as applied to [Defendant], N.C.G.S. § 14-415.1 is a reasonable regulation."
 
 Britt
 
 at 549,
 
 681 S.E.2d at 322
 
 (2009). In doing so, this Court considers the following five factors:
 

 (1) the type of felony convictions, particularly whether they "involved violence or the threat of violence[,]" (2) the remoteness in time of the felony convictions; (3) the felon's history of "lawabiding conduct since [the] crime," (4) the felon's history of "responsible, lawful firearm possession" during a time period when possession of firearms was not prohibited, and (5) the felon's "assiduous and proactive compliance with the 2004 amendment."
 

 State v. Whitaker,
 

 201 N.C. App. 190
 
 , 205,
 
 689 S.E.2d 395
 
 , 404 (2009) (brackets omitted) (citing
 
 Britt
 
 at 550,
 
 681 S.E.2d at
 
 323 ).
 

 This Court has held that in order to prevail on an as-applied constitutional challenge to
 
 N.C. Gen. Stat. § 14-415.1
 
 , the party challenging the statute must present sufficient evidence to allow the trial court to make findings of fact relevant to the five above-quoted factors enumerated in
 
 Britt
 
 .
 
 State v. Buddington
 
 ,
 
 210 N.C. App. 252
 
 , 255,
 
 707 S.E.2d 655
 
 , 657 (2011). When the trial court fails to make findings of fact, this Court may still analyze defendant's as-applied challenge to
 
 N.C. Gen. Stat. § 14-415.1
 
 when there is uncontroverted evidence in the record "as to defendant's prior convictions, his history of a lack of lawabiding conduct since [the] crime, and of firearm possession, and his compliance with the 2004 amendment."
 
 Whitaker
 
 at 205,
 
 689 S.E.2d at 404
 
 (internal citation and quotation marks excluded).
 

 Applying the five factors in this case,
 
 N.C. Gen. Stat. § 14-415.1
 
 is constitutional as applied to Defendant. First, we consider whether Defendant's prior felony conviction involved violence or a threat of violence.
 
 Whitaker
 
 at 205,
 
 689 S.E.2d at 404
 
 . The record reveals Defendant was convicted of possessing a sawed-off shotgun in 2005, a weapon of mass destruction. Second, although Defendant's felony conviction was eleven years ago, this Court has upheld the statute as constitutional as applied to a defendant where there was a span of
 
 *548
 
 eighteen years between the prior felony conviction and the possession charge.
 
 See
 

 State v. Bonetsky,
 
 --- N.C. App. ----, ----,
 
 784 S.E.2d 637
 
 , 641,
 
 disc. review denied
 
 , --- N.C. ----,
 
 786 S.E.2d 917
 
 (2016). As to the third factor, the felon's history of law-abiding conduct, Defendant has been convicted of driving while impaired, simple assault and assault on a female. Defendant also has two convictions for driving without an operator's license, one charge of being intoxicated and disruptive, felony possession of a weapon of mass destruction, and most recently, fishing without a license. This Court has assessed previous misdemeanor convictions as part of a "blatant disregard for the law."
 
 *369
 

 Whitaker
 
 at 206,
 
 689 S.E.2d at 404
 
 . The fourth factor related to the felon's history of lawful firearm possession. Here, the record establishes Defendant was unlawfully possessing at least one firearm since his conviction in 2005. As to the fifth factor, compliance with
 
 N.C. Gen. Stat. § 14-415.1
 
 , Defendant concedes he cannot claim compliance with that statute. In considering these five
 
 Britt
 
 factors, we cannot conclude
 
 N.C. Gen. Stat. § 14-415.1
 
 is unconstitutional as applied to Defendant.
 

 As to Defendant,
 
 N.C. Gen. Stat. § 14-415.1
 
 is a reasonable regulation which is "fairly related to the preservation of public peace and safety."
 
 Britt
 
 at 550,
 
 681 S.E.2d at 323
 
 . It is not unreasonable to prohibit a convicted felon who has subsequently violated the law on several occasions from possessing a firearm in order to preserve "public peace and safety."
 
 Id.
 
 at 550,
 
 681 S.E.2d at 323
 
 .
 
 N.C. Gen. Stat. § 14-415.1
 
 is not unconstitutional under our State Constitution as applied to Defendant.
 

 NO ERROR.
 

 Judges STROUD and TYSON concur.
 

 [1]
 

 Although decisions from the Federal Circuit Court of Appeals are not binding on this Court, we may consider such decisions as persuasive authority.
 
 See
 

 Carolina Power & Light Co. v. Employment Sec. Comm'n of N.C.,
 

 363 N.C. 562
 
 , 569,
 
 681 S.E.2d 776
 
 , 780 (2009) (noting that while not binding, a decision from another jurisdiction was nonetheless "instructive").
 

 [2]
 

 See
 

 Md. Code Ann., Pub. Safety §§ 5-133
 
 (b)(1), 5-205(b)(1) (2016).