An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1087

Filed 20 August 2025

Watauga County, Nos. 23CRS000360, 23CRS347581, 23CRS347608

STATE OF NORTH CAROLINA

       v.

WILLIAM CLAUDE REECE

Appeal by defendant from orders entered 6 February 2024 and 7 February 2024 by Judge R. Gregory Horne in Watauga County Superior Court. Heard in the Court of Appeals 31 July 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Madison L. Beveridge and Assistant Attorney General Barbara A. Jackson, for the State.*
>
> *Sherrill & Emehel, P.A., by Johneric C. Emehel, for Defendant.*

PER CURIAM.

## I.    Background

On 30 June 2023, seventy-three-year-old William Claude Reece ("defendant") was arrested for the offenses of Possession of Firearm by a Felon, Possession of Methamphetamine, and Possession of Drug Paraphernalia. **{R. 1-4, 8-9.}** He was subsequently indicted for all three offenses on 5 September 2023 by a Watauga

County Grand Jury. **{R. 14-15.}** On 4 December 2023, the Grand Jury also indicted defendant as a habitual felon. **{R. 16.}**

Prior to his arrest, defendant had prior convictions extending back to 1977. **{R. 46.}** Between 1997 and 2015, defendant was convicted of ten charges related to driving with a revoked or invalid driver's license. **{R. 45-46.}** Defendant was convicted of driving while intoxicated first in 1977 and was convicted of the same or similar offenses eleven more times through 2014. **{R. 45-46.}** Defendant received his first indictment for Possession of Methamphetamine on 4 December 2013 and was indicted on the same charge twice more on 14 March 2016 and 12 July 2020. **{R. 45.}** The record also shows various convictions for marijuana possession, faulty registration, lack of insurance, larceny, contempt of court, child abandonment, and non-support. **{R. 45-46.}** However, defendant's record includes no violent crimes. **{R. 45-46.}**

On the evening of 30 June 2023, defendant was driving a white Ford Fusion registered to Sue Ann Meade ("Ms. Meade") on Highway 421. **{Tr. 45-46.}** Deputy Emily McPherson ("Deputy McPherson") of Watauga County Sheriff's Office, who was parked alongside the highway, pulled out behind defendant and ran the vehicle tags; she discovered that the vehicle was registered to Ms. Meade, whose license was suspended. **{Tr. 45-47.}** As a result, Deputy McPherson initiated a traffic stop. **{Tr. 49-50.}** After pulling over, defendant exited the car and approached Deputy McPherson's vehicle until she asked him to stop. **{Tr. 50-51.}** He provided Deputy

McPherson with his name and age, with which she discovered that his license had been suspended and there was an outstanding warrant for his arrest. **{Tr. 51-53.}** As a result, Deputy McPherson placed defendant under arrest. **{Tr. 53-54.}**

Subsequently, given defendant's suspicious behavior at the beginning of the stop, McPherson contacted her supervisor, Lieutenant Casey Miller ("Lieutenant Miller"), to conduct a K-9 search of the vehicle. **{Tr. 54.}** The K-9 alerted on the vehicle and, during the search, Lieutenant Miller found a gray zipper bag that contained a set of scales, a lighter, a red Solo cup, a purple vape, pill bottles, and multiple plastic baggies. **{Tr. 131-34.}** He also found a glasses case that contained a glass smoking pipe filled with a brown and white residue, scissors, and a plastic straw. **{Tr. 75, 135.}** The residue was eventually found to contain roughly 0.32 gram of methamphetamine. **{Tr. 114-115.}** He also found a black pouch that contained $2,435.00 in cash, and a handgun in the glove box. **{Tr. 59, 136-37.}**

After discovering that defendant was a convicted felon, Deputy McPherson informed him that he was under arrest for the firearm and drug paraphernalia found in his vehicle. **{Tr. 59-60.}** Defendant declined to answer any questions after being read his *Miranda* rights. **{Tr. 61.}** Deputy McPherson proceeded to transport defendant to the Magistrate's office for booking, and then to jail; the only additional statements defendant made were to inquire about the money that was found in his vehicle. **{Tr. 63-64.}**

Defendant's cases were called for trial on 5 February 2024. At trial, defendant stipulated to a prior felony conviction for possession of a firearm by a felon. **{Tr. 31-32.}** On 6 February 2024, a jury found defendant guilty of all three charges. **{R 34-35}** On 7 February 2024, defendant pleaded not guilty to habitual felon status, and the jury found him guilty. The trial court sentenced defendant to a minimum of 117 months and a maximum of 153 months in the custody of the North Carolina Department of Adult Corrections. **{R. 50-51.}** Defendant gave oral notice of appeal in open court. **{R. 50-51.}**

## II.     Discussion

Defendant contends that N.C. Gen. Stat. § 14-415.1(a) is unconstitutional under the Second and Fourteenth Amendments of the United States Constitution and under Article I, Section Three of the North Carolina Constitution. Defendant argues that the statute, which criminalizes the possession of a firearm by a felon, violates his right to bear arms under both the United States and N.C. State Constitutions, and is inconsistent with the "historical tradition of firearm regulation" in the United States.

As this constitutional issue was not raised before the trial court, defendant requests that we invoke Rule 2 to suspend the rules and waive the requirements of Rule 10 to consider his federal facial constitutional challenge. Rule 2 of the North Carolina Rules of Appellate Procedure allows for the Court to suspend the normal requirements for appellate review to "prevent manifest injustice to a party",

especially upon new, binding precedent. N.C. R. App. P. 2; *see State v. Radomski*, 294 N.C. App. 108, 112, 901 S.E.2d 908, 912–13, *review denied*, 386 N.C. 557, 904 S.E.2d 542 (2024), and *writ denied*, 904 S.E.2d 548 (N.C. 2024). Defendant failed to preserve this issue, but we grant consideration of the merits by invoking Rule 2 due to the "newly percolating and widely occurring issue" presented. N.C. R. App. P. 2; *Radomski*, 901 S.E.2d at 913.

The Second Amendment of the United States Constitution declares that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. This is reiterated in the North Carolina Constitution. N.C. Const. art. I, § 30. However, this right is not unlimited. *Rahimi*, 602 U.S. at 690 (*quoting District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). When a state statute restricts this right, the state has the burden of proving that the regulation is consistent with the Nation's history and tradition. *Bruen*, 591 U.S. at 17. The government does not need "a historical *twin*" but to "identify a well-established and representative historical *analogue*" to justify the modern statutory regulation. *Id*. at 30.

Defendant argues that N.C. Gen. Stat. § 14-415.1(a), which makes it unlawful for someone convicted of a felony "to purchase, own, possess, or have in his custody, care, or control any firearm", does not meet this burden. We disagree. This Court has upheld the constitutionality of § 14-415.1 under both the United States Constitution and the Constitution of North Carolina on multiple occasions. *See State v. Fernandez*, 256 N.C. App. 539, 548, 808 S.E.2d 362, 369 (2017) ("It is not

unreasonable to prohibit a convicted felon who has subsequently violated the law on several occasions from possessing a firearm in order to preserve 'public peace and safety.' "); *see also State v. Whitaker*, 201 N.C. App. 190, 203, 689 S.E.2d 395, 402–03 (2009).

Most recently, this Court analyzed the same issue following *Bruen* and again held that the statute was constitutional in *State v. Nanes*, ___ N.C. App. ___, 912 S.E.2d 202 (2025). We are bound by this decision. *See In re Civil Penalty*, 379 S.E.2d 30, 37 (1989).

In *Nanes*, the defendant shot and killed two people. 912 S.E.2d at 205. He was indicted on two counts of first-degree murder and one count of possession of a firearm by a felon. *Id.* at 206. The defendant moved to dismiss the possession charge, claiming it violated his fundamental right to bear arms. *Id.* The trial court denied the motion, and he was found guilty on all charges. *Id.* On appeal, this Court examined and upheld the constitutionality of N.C. Gen. Stat. § 14-415.1. *Id.* at 213.

The Supreme Court held that prohibitions on firearm possession for convicted felons are firmly within the Nation's history and tradition and are "presumptively lawful." *Heller*, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."); *Rahimi*, 602 U.S. at 699; *see also Bruen*, 591 U.S. at 81 (Kavanaugh, J., concurring). This statute is sufficiently analogous to historical firearm regulations. *Nanes*, 912 S.E.2d at 208.

Defendant also raises an as-applied challenge to the constitutionality of the relevant statute. "An as-applied challenge requires a defendant to show the statute at issue is unconstitutional as applied to the facts of his specific case." *Nanes*, 912 S.E.2d at 209. Defendant attempts to rely upon *State v. Radomski* in arguing that the statute, as applied to his situation, is unconstitutional. **{Appellant Br. 15.}**

In *Radomski*, the defendant drove himself to UNC Hospital in pursuit of medical treatment and parked in the hospital parking lot. *State v. Radomski*, 294 N.C. App. 108, 110, 901 S.E.2d 908, 911 (2024). Given the defendant's status as homeless, all of his personal belongings were in his vehicle at the time of the incident. *Id.* Initially, the defendant was questioned due to the lack of insurance coverage on his vehicle; the firearm was discovered after he admitted it was in the car. *Id.* He was indicted on one count of possession of a firearm on educational property, despite his repeated assertions that he was unaware he was on school property. *Radomski*, 294 N.C. App. at 110–11, 901 S.E.2d at 911–12. This Court held that, because the parking lot was "non-sensitive" in nature, it was unconstitutional to apply the relevant statute to the defendant. *Id.* at 114, 901 S.E.2d at 914.

Two problems arise in defendant's attempts to rely upon *Radomski* in his own case. First, *Radomski* involved a challenge to a completely different statute; instead of being centered on § 14-415.1(a), it revolves around a statute forbidding the possession of firearms educational property. Second, the facts of *Radomski* present a unique situation in which the illegality of the defendant's possession of the firearm

was unclear to him.  Both render *Radomksi*'s application to the defendant's situation inappropriate.  Therefore, even if a sufficient fact-specific argument had been raised in support of the defendant's as-applied challenge, it would fail.

### III.    Conclusion

For the foregoing reasons, we affirm.

AFFIRMED.

Panel consisting of Judges ARROWOOD, STADING, and MURRY.

Report per Rule 30(e).