IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-38

Filed 15 October 2025

Forsyth County, No. 23CRS248095-330

STATE OF NORTH CAROLINA

       v.

DARIUS LAMAR WILLIAMS

      Appeal by the State from order entered 25 July 2024 by Judge Lora C. Cubbage

in Superior Court, Forsyth County.  Heard in the Court of Appeals 15 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Benjamin Szany, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for defendant.*

      ARROWOOD, Judge.

      The State of North Carolina ("the State") appeals from an order dismissing a charge of possession of a firearm by a felon, as codified in N.C.G.S. § 14-415.1, against Darius Williams ("defendant").  The State contends the trial court erred in finding N.C.G.S. § 14-415.1 unconstitutional as applied to defendant under the United States and North Carolina Constitutions.  For the following reasons, we vacate the order and remand this case to the trial court.

## I.     Background

      On 3 March 2023, defendant was stopped by the Winston Salem police for an

expired vehicle registration. Upon searching the vehicle, police found a gun at the bottom of a large black tote. Police also found a folded dollar bill in defendant's front pocket, which was sent for field testing and tested positive for cocaine. Defendant was charged with one count of felony possession of cocaine and one count of possession of a firearm by a felon, as he had previously pled guilty to felony possession of cocaine with intent to sell or distribute on 10 January 2005. He was indicted on these charges 16 January 2024.

According to defendant's prior record level worksheet, prepared 25 April 2023, defendant had been convicted of seven felonies between 2000 and 2005, all relating to the possession or sale of cocaine except a possession of a firearm by a felon conviction in 2000. Defendant had also been convicted of seven misdemeanors between 2004 and 2014, including violation of a domestic violence protection order and a charge of communicating threats.

On 16 June 2023, defendant filed a motion to dismiss the charge of possession of a firearm by a felon as unconstitutional as applied to him under the Second Amendment of the United States Constitution, and Article 1, Section 30 of the North Carolina Constitution. Defendant filed an updated motion on 15 July 2024, incorporating additional authority that followed the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). The trial court granted defendant's motion, concluding that defendant was a protected person under both Constitutions; that the *Bruen* decision therefore required the State

to demonstrate the existence of a historical analogue to the felon in possession statute existing around the years 1797 and 1867 (the years the Second and Fourteenth Amendments were ratified, respectively); that the State failed to do so; and that defendant's rights under both Constitutions were violated by the application of the statute to his conduct. The State gave oral notice of appeal at the hearing, and subsequent written notice 25 July 2024.[1]

## II.   Discussion

The State raises one issue on appeal: whether the trial court erred by finding that N.C.G.S. § 14-415.1 violated defendant's rights under the federal and state Constitutions. We hold the trial court erred.

### A.   Standard of Review

"The standard of review for questions concerning constitutional rights is *de novo*. Furthermore, when considering the constitutionality of a statute or act there is a presumption in favor of constitutionality, and all doubts must be resolved in favor of the act." *Row v. Row*, 185 N.C. App. 450, 454–55 (2007) (cleaned up). When engaged in *de novo* review, " 'the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Wright*, 918 S.E.2d 623, 626 (N.C. 2025) (citations omitted).

### B.   Challenged Statute and Pertinent Caselaw

---

[1] Also during this hearing, the State voluntarily dismissed the charge of possession of cocaine.

"It shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon of mass death and destruction . . . ." N.C.G.S. § 14-415.1(a) (2025). A person found to violate the provisions of this subsection is guilty of a Class G felony.[2] *Id.*

> Prior convictions which cause disentitlement under this section shall only include:
> (1) Felony convictions in North Carolina that occur before, on, or after December 1, 1995; and
> (2) Repealed by Session Laws 1995, c. 487, s. 3, effective December 1, 1995.
> (3) Violations of criminal laws of other states or of the United States that occur before, on, or after December 1, 1995, and that are substantially similar to the crimes covered in subdivision (1) which are punishable where committed by imprisonment for a term exceeding one year.

*Id.* § 14-415.1(b). Felonies related to antitrust violations, unfair trade practices, and restraints of trade are excepted. *Id.* § 14-415.1(e). A person convicted of only one non-violent felony, whose civil rights were restored at least 20 years prior, may petition the district court of their place of residence to have their firearm rights restored. *Id.* § 14-415.4. Our North Carolina statute is similar to the federal felon in possession statute, which makes it "unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one

---

[2] A recent amendment to the statute effective 1 December 2025 added three additional subsections for elevated punishments in certain circumstances, including where the violation occurs during the commission of a felony, involves the brandishing of a firearm, or the discharge of a firearm. Act of Jul. 9, 2025, S.L. 2025-71, § 8, https://www.ncleg.gov/EnactedLegislation/SessionLaws/PDF/2025-2026/SL2025-71.pdf (to be codified as amended at N.C.G.S. 14-415.1(a1)-(a3) (2025)).

year . . . [to] possess in or affecting commerce, any firearm or ammunition . . . ." 18 U.S.C. § 922(g)(1) (2024).

### 1. Federal Caselaw

Recent Second Amendment jurisprudence starts with *District of Columbia v. Heller*, in which the Supreme Court considered whether a prohibition on the possession of usable handguns in the home violated the Second Amendment. 554 U.S. 570, 573 (2008). The Court struck down the statute, concluding that a ban on a gun that so many Americans use for self-defense and defense of the home, violated the heart of the Second Amendment's guarantees. *Id.* at 628–29. The Court noted that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Id.* at 626. *Heller* was followed by *McDonald v. City of Chicago*, which, applying *Heller*, struck down a Chicago handgun ordinance by making the Second Amendment applicable to the states through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

In *Hamilton v. Pallozzi*, the Fourth Circuit considered an as-applied challenge to two Maryland statutes prohibiting the plaintiff from possessing firearms; the plaintiff had been convicted of three felonies for financial crimes in Virginia, but had his rights restored in Virginia pursuant to Virginia Code § 18.2-308.2. *Hamilton v. Pallozzi*, 848 F.3d 614, 618 (4th Cir. 2017). The Fourth Circuit addressed the two-prong framework established by *Heller* with the first prong requiring "historical

review to evaluate whether [Second Amendment] rights, as understood in 1791, are 'burdened or regulated' by the statute in question[,]" and the second prong assessing whether the statute passes "constitutional muster in accordance with the appropriate level of judicial scrutiny." *Id.* at 623 (citations omitted). The court further recognized that *United States v. Moore*, 666 F.3d 313, 318–19 (4th Cir. 2012), streamlined the analysis for a presumptively lawful regulation; rather than engaging in extensive historical review on the first prong, the court considered "whether the challenger's conduct is within the protected Second Amendment right of 'law-abiding, responsible citizens to use arms in defense of hearth and home[,]' " as well as whether the plaintiff showed "that his factual circumstances remove[d] his challenge from the realm of ordinary challenges." *Hamilton*, 848 F.3d at 624. Applying this framework to the plaintiff's case, the Fourth Circuit determined the plaintiff was unable to rebut the presumption that he fell outside the category of "law-abiding, responsible citizens," due to plaintiff's status as a state law felon that had not received a pardon or had the basis for his conviction declared unconstitutional or otherwise unlawful. *Id.* at 627–28.

The Supreme Court next built on *Heller* and *McDonald* in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, where it considered a New York licensing scheme for the possession of firearms. 597 U.S. at 11. At the time, it was a crime in New York to "possess 'any firearm' without a license, whether inside or outside the home." *Id.* at 11–12. A license to possess a firearm could be obtained by showing a "licensing

officer" that the applicant was "of good moral character, has no history of crime or mental illness, and that 'no good cause exists for the denial of the license.'" *Id.* at 12.

The Court began by addressing a two-step approach for evaluating Second Amendment issues developed by the appellate courts since *Heller*. *Id.* at 17. The first step was a historical inquiry into the burdened conduct; if the burdened conduct was historically protected, the courts would proceed to the second step, considering whether the burdened conduct was part of the "core" right to self-defense. *Id.* at 18–19. The Court rejected the two-step approach and provided its own test, drawn from *Heller*: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

The Court determined that New York had "not met their burden to identify an American tradition justifying the State's proper-cause requirement[,]" and could not adequately justify its statutory scheme for firearm licensure. *Id.* at 70–71. Justice Kavanaugh wrote to underscore that the Second Amendment is not a "regulatory straightjacket," and reincorporated the words of *Heller* that felon in possession laws were not in doubt. *Id.* at 80–81 (Kavanaugh, J. concurring).

The recently decided case of *United States v. Rahimi* addressed the facial constitutionality of a federal statute which prevents someone subject to a domestic violence restraining order from possessing a firearm. 602 U.S. 680, 684 (2024). The

Supreme Court noted that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791[,]" and when performing a historical inquiry, courts should examine whether modern laws used "similar restrictions for similar reasons." *Id.* at 691–92. The Court identified a tradition, stemming from the surety and "going armed" laws, of disarming those who pose a clear threat of physical violence. *Id.* at 698. The Court held this tradition did not need to be a perfect fit for the federal statute, but an "historical analogue" rather than a "twin." *Id.* at 700–701.

In response to Rahimi's argument that *Heller* required a finding of unconstitutionality, the Court pointed to that opinion's language affirming that a number of prohibitions, including the felon in possession of a firearm statutes, were presumptively lawful. *Id.* at 699. The Court further emphasized "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 700. At the same time, the Court rejected the State's argument that someone could be disarmed merely because they were not "responsible," but declined to further expound on who were the ordinary class of citizens covered by the Second Amendment. *Id.* at 701–02.

Following *Rahimi*, the Fourth Circuit addressed another challenge to U.S.C. § 922(g)(1) in *United States v. Hunt*. 123 F.4th 697 (4th Cir. 2024) *cert. denied*, 145 S. Ct. 2756 (2025). The court considered the framework for review as it had developed since *Heller*, concluding that recent Fourth Circuit decisions including *Hamilton* and

*Moore* could be reconciled with *Bruen*, *Rahimi*, and *Heller*, as the applicability of *Heller*'s language about "longstanding" and "presumptively lawful" prohibitions had been "repeatedly reaffirmed[.]" *Id.* at 703. The Fourth Circuit further emphasized that although *Bruen* had rejected the "means-end scrutiny" prong, *Bruen* " 'did not disturb' . . . [the] 'first step,' including holdings about whether a given situation is 'outside the ambit of the individual right to keep and bear arms.' " *Id.* at 704 (citation omitted). Accordingly, "*Bruen* and *Rahimi* thus provide no basis for a panel to depart from this Court's previous rejection of the need for any case-by-case inquiry about whether a felon may be barred from possessing firearms." *Id.*

The Fourth Circuit proceeded to address Hunt's challenge under *Bruen*, reviewing "the historical scope of the Second Amendment" to determine "what is and is not protected by the constitutional text." *Id.* at 705 (citing *United States v. Price*, 111 F.4th 392, 401 (4th Cir. 2024) (en banc)). The court reasoned that *Heller* "instructs that the '*pre-existing* right' 'codified' in the Second Amendment protects firearms possession by the law-abiding, not by felons." *Id.* (emphasis in original) (citation omitted). Accordingly, the court determined U.S.C. § 922(g)(1) regulated activity that fell outside the scope of the Second Amendment right as originally understood. *Id.* (citing *Bruen*, 597 U.S. at 18). Although the inquiry was satisfied at the first step, the court further concluded that the statute would survive the second step of the *Bruen* analysis, discussing several historical examples supporting "the categorical disarmament of people 'who have demonstrated disrespect for legal norms

of society.' " *Id.* at 706 (discussing punishments for convicted felons and other non-violent offenders including estate forfeiture and death). Finally, noting *Rahimi*, the court concluded:

> Because felons, by definition, have "demonstrated disrespect for legal norms of society," the legislature has determined that "the category as a whole presents an unacceptable risk of danger if armed." That legislative judgment accords with historical tradition regulating non-law-abiding persons and is consistent with the Supreme Court's repeated instruction that longstanding prohibitions "on the possession of firearms by felons and the mentally ill, are presumptively lawful."

*Id.* at 708 (cleaned up).

### 2.    State Caselaw

While *Heller*, *McDonald*, *Hamilton*, *Bruen*, *Rahimi*, and *Hunt* provide the necessary superstructure for analyzing a Second Amendment matter, we must also address our state jurisprudence as it relates to N.C.G.S. § 14-415.1. We first turn to our own Court's analysis in *State v. Fernandez*, 256 N.C. App. 539 (2017).

Unlike the federal cases outlined above, *Fernandez* concerns an as-applied challenge to the North Carolina felon in possession law itself. *Id.* at 539–40. The defendant, who had previously been convicted of possession of a weapon of mass destruction, was charged with possession of a firearm by a felon after police found a shotgun in his home while investigating an alleged break-in. *Id.* at 541–42.

In evaluating Fernandez's appeal, the Court discussed the two-step analysis used by the federal appellate courts prior to *Bruen*. *Id.* at 545 (citing *United States*

*v. Chester*, 628 F.3d 673 (4th Cir. 2010)). The first prong concerns "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee[,]" requiring a historical inquiry of whether the conduct at issue was "within the scope of the right at the time of ratification." *Id.* (quoting *Johnston v. State*, 224 N.C. App. 282, 290 (2012)). If a regulation "burdens conduct" that was within the scope of the Second Amendment right at the time of ratification, "we move to the second step of applying an appropriate form of means-end scrutiny." *Id.* (quoting *Johnston*, 224 N.C. App. at 290).

The Court recognized that after *Johnston*, the Fourth Circuit streamlined its analysis in *Hamilton* and *Moore*. *Id.* (citing *Hamilton*, 848 F.3d at 623). Accordingly, the Court determined that the defendant was a convicted felon and was unable to "show he is a 'law-abiding, responsible citizen,' " which removed him from the class of protected citizens, and was further unable to rebut the challenged Act's presumption of lawfulness. *Id.* at 546–47 (citing *Hamilton*, 848 F.3d at 629). Therefore, the defendant was unable to pass the first prong of the *Hamilton* analysis, and the Court did not address the second prong. *Id.* at 547.

The most salient case after *Fernandez* is *State v. Nanes*, 297 N.C. App. 863 (2025). Nanes, who had previously been convicted of felony animal cruelty, was charged with and convicted of murder and possession of a firearm by a felon. *Id.* at 864, 870. He appealed the latter charge, arguing that the statute was unconstitutional, both facially and as applied to him. *Id.* at 866. In analyzing Nanes'

facial challenge, the Court stated "that section 14-415.1 undoubtedly regulates conduct that the Second Amendment's plain text covers as it revokes an individual's right to keep and bear arms following a felony conviction." *Id.* at 867–68. The Court then engaged in the historical analysis of *Bruen* and *Rahimi*; although this was limited to an analysis of felons convicted of violent crimes, the Court determined there was a sufficient historical tradition of disarming felons, and that the defendant "ha[d] a demonstrated history of violence towards others," such that both challenges failed. *Id.* at 868–71.

### C.    Federal As-Applied Challenge

"An as-applied challenge requires a defendant to show the statute at issue is unconstitutional as applied to the facts of his specific case." *Nanes*, 297 N.C. App. at 870. The question of whether defendant is a member of "the people" within the purview of the Second Amendment is central to our inquiry, as demonstrated by *Bruen*, *Rahimi*, *Hunt*, *Fernandez*, *Nanes*, and the trial court below. *Fernandez* and *Nanes*, however, fundamentally conflict in answering this question.

First and foremost, "a panel of the Court of Appeals is bound by a prior decision of another panel of the same court addressing the same question, but in a different case, unless overturned by an intervening decision from a higher court." *In re Civil Penalty*, 324 N.C. 373, 384 (1989). However, since our prior panels conflict without acknowledgement, we are presented with the "rare situation" in which "our Supreme Court has authorized us to disregard our own precedent . . . ." *State v. Gonzalez*, 263

N.C. App. 527, 531 (2019) (citations omitted).  This situation arises when "two lines of irreconcilable precedent develop independently—meaning the cases never acknowledge each other or their conflict . . . .  In that circumstance, the Supreme Court has authorized us to follow the older of the two cases and reject the more recent precedent."  *Id.* at 531 (cleaned up).

Defendant attempts to argue that concluding he is not one of "the people" is wrong "for a host of reasons,"[3] and contends that *Nanes* forecloses any argument to the contrary by way of *In re Civil Penalty*, because the Court in *Nanes* recognized that persons convicted of felonies are part of "the people" protected by the Second Amendment's plain text.  On this issue, however, defendant never acknowledges the existence of *Fernandez*, nor, consequently, does he acknowledge the steps we are required to take under *Civil Penalty* when prior panels conflict.

Significantly, *Fernandez* has already answered the question of whether felons subject to N.C.G.S. § 14-415.1 are protected by the Second Amendment.  Although *Nanes* concludes that the statute regulated conduct covered by the Second Amendment's plain text, it simply presumes that because Nanes is "an individual,"

---

[3] The "host of reasons" defendant cites as to why he is one of "the people" comes by way of the recent Third Circuit opinion *Range v. Attorney General*, 124 F.4th 218 (3rd Cir. 2024).  There, the Third Circuit noted that the Supreme Court had never explicitly determined who was a member of "the people" in *Heller*, *McDonald*, and *Bruen*, and relying on other text from the Constitution, comments made in non-majority opinions from other federal courts, and its own historical analysis, determined that felons are protected by the Second Amendment.  *Id.* at 226–28.  However, we are not bound by Third Circuit jurisprudence, and further find the facts and circumstances of *Range* to be distinguishable from this case such that the analysis of that appellant's as-applied challenge is not controlling here.

this means he is considered part of "the people[,]" failing to recognize *Fernandez* or other relevant federal caselaw. *See Nanes*, 297 N.C. App. at 867–68. Furthermore, apart from *Nanes*, neither we nor the federal courts we are bound to follow have interpreted this phrase to have the meaning *Nanes* gives it. Because *Nanes* does not acknowledge *Fernandez*, we are not bound by its reasoning that the Second Amendment presumptively protects possession of firearms by felons.

In accordance with *Fernandez*,[4] as well as the more recent federal decisions *Bruen* and *Hunt*, we proceed to review "the historical scope of the Second Amendment" to determine "what is and is not protected by the constitutional text[,]" and whether N.C.G.S. § 14-415.1 as applied to defendant is consistent with the historical tradition of firearm regulation.

On the first step, we find the Fourth Circuit's analysis and reasoning in *Hunt* instructive, namely that the "pre-existing right" codified by the Second Amendment protects firearm possession by law-abiding citizens, but not necessarily by convicted felons. *Hunt*, 123 F.4th at 705. This is consistent with *Bruen* which provided that "two ordinary, law-abiding, adult citizens" were part of "the people" protected by the Second Amendment, as was their right to bear arms in public for self-defense, which the Supreme Court recognized as a "pre-existing right[.]" *Bruen*, 597 U.S. at 31–33.

---

[4] Although we note that *Fernandez* was decided prior to the *Bruen* Court's rejection of the two-step analysis, its holding is ultimately unaffected. As previously discussed, the analysis on the first step as guided by *Hamilton* and *Hunt* can be reconciled with *Bruen*, and accordingly *Fernandez* is similarly undisturbed.

In this case, defendant had been convicted of six felonies relating to the possession or sale of cocaine, as well as seven misdemeanors, including violation of a domestic violence protection order and communicating threats. Defendant has not received a pardon for any of these convictions, nor have any of the convictions been declared unlawful.

Accordingly, defendant is unable to establish that he is a "law-abiding citizen" protected by the Second Amendment; pursuant to *Bruen* and *Rahimi*, N.C.G.S. § 14-415.1 is presumptively lawful as applied to defendant. We hold the trial court erred by concluding that defendant "is included in the Second Amendment protected people category as a law abiding and responsible person," and his as-applied challenge, arguing that his rights were violated by the application of § 14-415.1(a), must necessarily fail. As we have concluded that defendant cannot pass the first step of the *Bruen* test, it is unnecessary to address the second step.

### D.    State Constitutional Challenge

The State also argues the trial court erred in concluding that N.C.G.S. § 14-415.1 was unconstitutional as applied to defendant under the North Carolina Constitution. We agree.

The North Carolina Constitution reads, in pertinent part,

> A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed . . . .

N.C. Const. Art. I Sec. 30. While recognizing this right, our courts have nonetheless

held "that regulation of the right to bear arms is a proper exercise of the General Assembly's police power, but that any regulation must be at least 'reasonable and not prohibitive, and must bear a fair relation to the preservation of the public peace and safety.' " *Britt v. State*, 363 N.C. 546, 549 (2009) (quoting *State v. Dawson*, 272 N.C. 535, 547 (1968)). Our task, then, is to determine whether application of the felon in possession statute is reasonable as applied to the circumstances of defendant's case. *Britt*, 363 N.C. at 549.

We have developed a five-factor test to guide us in these types of as-applied challenges:

> (1) the type of felony convictions, particularly whether they involved violence or the threat of violence, (2) the remoteness in time of the felony convictions; (3) the felon's history of law[ ]abiding conduct since the crime, (4) the felon's history of responsible, lawful firearm possession during a time period when possession of firearms was not prohibited, and (5) the felon's assiduous and proactive compliance with the 2004 amendment.

*State v. Whitaker*, 201 N.C. App. 190, 205 (2009) (cleaned up) (quoting *Britt*, 363 N.C. at 550). These factors are not exhaustive, as our courts consider the conduct of the defendants holistically, through the lens of "public peace and safety." The defendant in *Britt*, who had been convicted of one felony count of possession with intent to sell and deliver a controlled substance 20 years prior, had a "long post-conviction history of respect for the law" and "seventeen years of responsible, lawful firearm possession;" further, there was no evidence he had ever committed violence. *Britt*, 363 N.C. at

549–50. By contrast, the defendant in *Whitaker* was found to have demonstrated a "blatant disregard for the law" due to numerous misdemeanor convictions; we also noted that he had been convicted of three felonies and that he had acquired guns after the 2004 amendment prohibited him from possessing them. *Whitaker*, 201 N.C. App. at 206.

By employing both the factors and a holistic view of defendant's criminal history, we agree with the State that defendant hews much closer to the defendant in *Whitaker* than in *Britt*. Defendant has been convicted of seven felonies and seven misdemeanors since 2000, the year he turned 18, more than twice the number of felonies in *Whitaker* and more convictions overall, including four misdemeanor controlled substance convictions nine years after his last felony.[5]

Defendant does not have a history of lawful firearm possession, as he was convicted of attempted possession of a firearm by a felon in 2000. The defendant in *Britt* successfully demonstrated compliance with the 2004 amendment by voluntarily turning in his guns and suing to have his rights restored; here, defendant has only challenged the statute after an indictment for violating it. *See Britt*, 363 N.C. at 548.

A critical distinction between both the *Britt* and *Whitaker* defendants, and defendant here, is the former's absence of a history of violence, while the latter has two convictions indicating a propensity for violence. Although the first factor focuses

---

[5] As noted below, defendant was convicted of attempted possession of a firearm by a felon in 2000, which indicates a criminal record stretching further back than that represented by the worksheet.

on violent felony convictions, of which defendant has none, *Britt* and *Whitaker* also examined misdemeanors and noted "lifelong nonviolence towards other citizens," something that defendant here cannot show. *See Britt*, 363 N.C. at 550. Here, defendant has two violence-related misdemeanor convictions: communicating threats and violating a domestic violence protection order, both from 2004. These convictions conflict with the trial court's finding that defendant has "no record of violence," nor was he ever "adjudicated as violent." Because this finding of fact is unsupported by competent evidence, we set it aside. *See State v. Wilkerson*, 257 N.C. App. 927, 929 (2018).

Defendant wishes us to adhere to the strict language of the first factor, which he argues weighs entirely in his favor, while ignoring the full context of *Britt* and *Whitaker*. When applying the necessary lens of "public peace and safety" to defendant's criminal record, we find that, rather than being a law-abiding, peaceful citizen whose rights should not be subject to a single non-violent crime, defendant has demonstrated a sometimes violent disregard for the laws of this State and the peace of its communities. The only factor working in defendant's favor is the 20-year period since his last felony conviction. However, when this factor is viewed in light of the entirety of his criminal record, and the fact that he did not remain conviction-free in the years following, it does not alter our conclusion that defendant's as-applied challenge to the statute on state constitutional grounds must fail.

## III.   Conclusion

For the foregoing reasons, the order of the trial court dismissing the charge of felony possession of a firearm by a felon is vacated and remanded.

VACATED AND REMANDED.

Judges TYSON and CARPENTER concur.